EASTERBROOK, Circuit Judge.
 

 James Hovis borrowed more than $2 million from the National Bank & Trust Company of Sycamore. The debt was secured by pledged stock plus liens on other assets. Hovis repeatedly fell behind in repayment, and the Bank repeatedly agreed to extend and restructure the repayment schedule. When Hovis failed to meet the latest restructured schedule, and the market price of some stock pledged to secure the loan fell, the Bank attempted to foreclose. Before it could do so, however, Hovis commenced this federal bankruptcy proceeding, and the automatic stay blocked the foreclosure. (James E. Hovis Trust No. 90 is a second debtor, which for simplicity we disregard.) Hovis proposed to reorganize and eventually pay all debts under Chapter 11, but to pay more slowly than the most recent schedule allowed. The Bank proposed immediate liquidation, contending that someone who repeatedly failed to pay despite schedule extensions should not be relied on to pay with yet another extension. Eventually the bankruptcy court confirmed Hovis’s plan. But he did not commence payments. Instead he sought yet again to balk the Bank’s claims.
 

 As far as we can discern, the bankruptcy judge never set a bar date for filing proofs of claim. Hovis had listed the Bank as a creditor to the tune of about $2.1 million. On June 2, 2000, two business days before the date set for the start of the hearing on the competing plans (Hovis’s plan of reorganization versus the Bank’s plan of liquidation), the Bank filed a formal proof of a claim for $2,083,427.92. This was a little less than Hovis’s estimate, so it is unsurprising that he did not protest. But on February 9, 2001, about a month after the bankruptcy court confirmed Hovis’s plan,
 
 *822
 
 he objected to the Bank’s claim — and, having filed an objection, apparently deemed himself liberated from any need to make payments under the plan. Miffed by this turn of events, which it saw as demonstrating that Hovis could not be relied on to keep his promises to repay, the Bank objected to the objection and argued that Hovis is estopped by confirmation of the plan to deny the amount of any creditor’s claim. The bankruptcy judge agreed with the Bank, as did the district judge on appeal. See 2002 U.S. Dist. LEXIS 8285, 2002 WL 976014 (N.D.Ill. May 3, 2002). Both the bankruptcy and the district courts also concluded that Hovis had failed to substantiate his objection, so that it failed independently of any estoppel:
 

 Like Bankruptcy Judge Barbosa, the district judge held that
 
 Adair v. Sherman,
 
 230 F.3d 890 (7th Cir.2000), gives rise to issue preclusion (collateral estoppel). The creditor in
 
 Adair
 
 filed a claim that did not draw an objection in a Chapter 13 proceeding. Later the debtor sued under the Fair Debt Collection Practices Act, contending that the creditor and its law firm routinely overstated the value of their collateral. We held that contention barred by the debtor’s failure to object in the bankruptcy itself. Once the bankruptcy proceeding came to a conclusion, the accuracy of the creditor’s claim was established.
 
 Adair,
 
 like its predecessor
 
 D & K Properties Crystal Lake v. Mutual Life Insurance Co.,
 
 112 F.3d 257 (7th Cir.1997), treat the amount of a debt (or collateral) established within bankruptcy as conclusive between the same parties in subsequent litigation. This is a normal application of preclusion. But issue preclusion has no role within a unitary, ongoing proceeding.
 
 Adair
 
 and similar decisions that arise from sequential suits are irrelevant within one suit.
 

 What matter within a single suit are the deadlines set by statute and rule, plus the law of the case and judicial estoppel. Law of the case has no bearing here, for the amount of the Bank’s claim has yet to be assessed by any tribunal. Nor does any statute or rule require objection to precede confirmation. Setting dates for filing of claims, and objecting to them, is within the discretion of the bankruptcy judge. Leeway is sensible, because sometimes the best means to administer an estate is to sell the assets quickly in order to maximize their value and only then turn to determining which creditors are entitled to how much.
 
 In re Qualitech Steel Corp.,
 
 276 F.3d 245 (7th Cir.2001), is an example. In “prepackaged” bankruptcies, evaluation of some claims similarly is deferred until the cash-flow problems have been solved by reducing payment obligations to the principal creditors. The plans of reorganization in quick-sale and prepack cases alike provide for payment of other claims whose value will be determined later. And in still other cases it" may not be possible to present or evaluate the claims before confirmation. When any large-scale business is reorganized, tort and warranty claims may not come in for months or years. It would greatly and needlessly disrupt ordinary, efficient means of reorganization to adopt a rule that all claims
 
 must
 
 be filed and litigated to conclusion before a plan of reorganization is confirmed.
 

 The bankruptcy judge initially appeared to recognize that much. The plan of reorganization it confirmed provides:
 

 Any and all objections to claims shall be filed with the Court by the Debtors and served upon each holder of such claims not later than sixty (60) days after the Effective Date. If an objection to any claim is not filed on or before that date, the claim shall be deemed an Allowed
 
 *823
 
 Claim and shall be satisfied as set forth in the Plan. Objections will be litigated to the entry of a Final Order. The Debtors may compromise and settle any objections to claims subject to the approval of the Bankruptcy Court.
 

 The Bank’s competing plan had a similar provision, allowing protest within 90 days. By objecting to the Bank’s claim within a month of the plan’s confirmation, Hovis complied with that deadline — one that does not contravene any statute or rule. As we emphasized in
 
 D & K Properties,
 
 judges should not extend the time except for good reason. See also
 
 Holstein v. Brill,
 
 987 F.2d 1268 (7th Cir.1993). But when a plan allows for post-confirmation adjustments to the size of a claim, the court ought not pull the rug out from under litigants who rely on that provision.
 

 If confirmation of the plan depended on the Bank’s claim being
 
 correct,
 
 then judicial estoppel might block a post-confirmation effort to deny the claim’s validity. One who argues a position in court, and prevails, rarely is entitled to switch ground and argue an inconsistent position later, even within the scope of a single proceeding. See, e.g.,
 
 New Hampshire v. Maine,
 
 532 U.S. 742, 749-51, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001);
 
 Astor Chauffeured Limousine Co. v. Runnfeldt Investment Corp.,
 
 910 F.2d 1540, 1547-49 (7th Cir.1990). Yet the parties did not debate the accuracy of the Bank’s claim at the confirmation hearing (so Hovis did not prevail on any theory about the claim’s value), and a plan promising to pay all valid claims need not imply that any given claim
 
 is
 
 valid to the full extent of the creditor’s demand. The most one can say is that, because the Bank is an objecting secured creditor, confirmation depended on proving that the promises made in the plan are the indubitable equivalent of realizing on the security in a sale under Chapter 7. See 11 U.S.C. § 1225(a)(5)(B)(ii);
 
 In re Murel Holding Corp.,
 
 75 F.2d 941, 942 (2d Cir.1935) (L.Hand, J.). Any post-confirmation proceedings that would deny the Bank this equivalent value thus are foreclosed. The line of argument that Hovis wishes to present, however, would have been equally available in liquidation under Chapter 7. He contends that the Bank sold some of the collateral in a commercially unreasonable manner, and that its claim therefore should be reduced by the difference between what the Bank actually obtained and what it could have obtained in a soundly conducted sale. That position does not conflict with any argument Hovis used to achieve confirmation of a Chapter 11 plan, nor would its success undermine the Bank’s entitlement to obtain through the confirmed plan at least as much as it could have realized via immediate liquidation.
 

 There remains the question whether Hovis has done enough to call into question the Bank’s claim, which is presumed valid under 11 U.S.C. § 502(b). Hovis complains that, despite the UCC’s requirements (implemented in Illinois by 810 ILCS 5/9-611), he did not receive notice of the Bank’s sale of the stock and did not learn of it until some months after the Bank filed its proof of claim. We must assume that this is so, and also assume that the sale preceded Hovis’s agreement late in 1996, as part of a restructuring of his debts to the Bank, to forego notice. Still, the lack of notice matters only if timely knowledge would have made a difference, and Hovis does not explain how it could have mattered. The collateral that the Bank sold was stock in Vista Information Systems, a publicly traded corporation. Selling stock at the going market price is reasonable. (To the extent Hovis supposes that a creditor must try to outguess the market and wait for prices to
 
 *824
 
 peak, he is wrong; the daily , market price reflects information in the hands of knowledgeable professional traders. Only a corporate insider; which the. Bank is not, could do better reliably. See John G. Cragg & Burton G, Malkiel,
 
 Expectations and the Structure of Share Prices
 
 (1982).) The only potential question then becomes whether the Bank applied the proceeds correctly to the debt. Hovis asked the Bank to document how it had applied the proceeds. The Bank did not produce any information along these lines, and its appellate brief does not mention the issue. Hovis is entitled to the full benefit of the collateral’s net proceeds, see 810 ILCS 5/9 — 20T(c)(2), and the bankruptcy court must' ensure that the Bank applied the funds properly. The decision is vacated, and the matter is remanded for this limited inquiry.