David Wegner and Janis Wegner,
Plaintiffs-Appellants,†

v.

West Bend Mutual Insurance Company,
Defendant-Respondent,

Rural Mutual Insurance Company,
Intervening Defendant-Respondent.

Court of Appeals

*No. 2005AP3193. Submitted on briefs October 30, 2006.
—Decided December 19, 2006.*

2007 WI App 18

(Also reported in 728 N.W.2d 30.)

† Petition to review filed.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Matthew A. Biegert* and *Anne E. Schmiege* of *Doar, Drill & Skow, S.C.* of New Richmond.

On behalf of the defendant-respondent, the cause was submitted on the brief of *James A. Pelish* and *Matthew Torgerson* of *Thrasher, Doyle, Pelish & Franti, Ltd.* of Rice Lake.

On behalf of the intervening defendant-respondent, the cause was submitted on the brief of *Ryan J. Steffes* and *Thomas J. Graham, Jr.* of *Weld, Riley, Prenn & Ricci, S.C.* of Eau Claire.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. CANE, C.J. David and Janis Wegner appeal two summary judgments in favor of West Bend Mutual Insurance Company and Rural Mutual Insurance Company. The first judgment held the Wegners were not entitled to the policy limits of both insurance policies in effect when their home was destroyed by a tornado. The second judgment awarded Rural a contribution payment from West Bend because Rural paid more than its liability for the Wegners' loss. The Wegners argue Wis. Stat. § 631.43(1) does not modify Wis. Stat. § 632.05(2),[1] requiring the coverage be prorated between the two insurance companies. Alternatively, the Wegners assert they have five affirmative defenses that preclude summary judgment. Finally, the Wegners claim they are entitled to prejudgment interest and attorney fees. We disagree and affirm the judgments.

### BACKGROUND

¶ 2. On June 18, 2001, a tornado totally destroyed David and Janis Wegner's home located in Siren, Wisconsin. At the time of the tornado, two insurances companies insured the Wegners' home. West Bend Mutual Insurance Company insured the Wegners' home with a policy limit of $151,000 and an escalator clause that increased the policy limits to the replacement cost

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

if it exceeded the stated policy limits. Effective June 13, 2001, Rural Mutual Insurance Company also insured the Wegners' home with a policy limit of $213,000 and an escalator clause.[2] Both policies contained other insurance provisions, providing pro rata coverage if any other insurance covered the dwelling.[3]

¶ 3. Before the tornado, but after the Rural policy's effective date, David Wegner attempted to cancel the West Bend policy on the phone, but was told he needed to cancel in writing. Both home insurance policies remained in effect when the tornado struck because the Wegners did not cancel their West Bend policy in writing.

¶ 4. On June 19, 2001, a claims adjuster from West Bend met with the Wegners and provided them with a check for $10,000 for living expenses. David also met with a Rural claims adjuster the same day. David agreed to Rural taking the lead in dealing with the coverage issues. Rural and West Bend subsequently agreed that Rural would pay all the Wegners' claims, and the two companies would prorate the amount Rural paid after the loss had been fully adjusted.

---

[2] Rural's increased limits were capped at 125% of the stated policy limits.

[3] The Rural policy provided:

Insurance Under More Than One Policy: If there is other valid and collectible insurance which applies to a loss or claim, or would have applied in the absence of this policy, the insurance under this policy shall be considered excess insurance. It shall not apply or contribute to the payment of any loss or claim until the amount of that other insurance is used up.

The West Bend policy provided:

Other Insurance: If a loss covered by this policy is also covered by other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss.

¶ 5. On June 22, 2001, Rural issued a check for $213,000, its stated policy limit to the Wegners. David then had a building contractor prepare an estimate to prove to Rural that their loss was greater than the stated dwelling limit, thereby activating the escalator clause. Based on the contractor's estimate, Rural expanded its policy limits and issued another check for $53,375 to the Wegners. Based on the contractor's estimate and Rural's payment to the Wegners, West Bend concluded the Wegners were fully compensated for their loss.

¶ 6. Because West Bend refused to pay the Wegners, they filed a complaint with the State office of the insurance commissioner. A public adjuster concluded the valued policy law required both insurers to pay their policy limits. Nevertheless, West Bend maintained insurance laws were complied with and refused to pay the Wegners.

¶ 7. On March 24, 2003, the Wegners filed suit against West Bend alleging: (1) the valued policy law, WIS. STAT. § 632.05(2), required both insurers to pay their policy limits and (2) the actual loss exceeded $266,875, meaning West Bend owed the Wegners money regardless of the valued policy law. Rural intervened and stated claims for contribution and subrogation against West Bend and the Wegners. The Wegners moved for summary judgment, arguing the valued policy law required West Bend to pay its policy limits for their loss. West Bend also moved for summary judgment, arguing the pro rata statute, WIS. STAT. § 631.43(1), qualified the valued policy law and, therefore, West Bend did not have to pay the Wegners because Rural already paid them for their loss. The court denied the Wegners' summary judgment motion and granted partial summary judgment to West Bend. The court limited the Wegners to their actual loss which was to be prorated between West Bend and Rural.

¶ 8. On January 11, 2005, the court conducted a trial to determine the Wegners' actual loss. The court found the value of the Wegners' dwelling on the day of the loss was $307,075.[4] Because of West Bend's escalator clause, the court's finding increased its limits for coverage to $307,075. The court prorated the policies and determined West Bend's share of the loss was $164,285.13, of which West Bend owed $40,200 to the Wegners. West Bend owed the remaining balance, $124,085.13, to Rural.

¶ 9. On August 15, the court entered partial judgment in favor of the Wegners and ordered West Bend to pay the remaining balance into an interest bearing escrow account pending further order of the court. In its July 27 decision, the court denied the Wegners' claims for prejudgment interest and reasonable attorney fees.

¶ 10. Rural then moved for summary judgment asking the court to award it the remaining balance held in trust. The Wegners also moved for summary judgment asking for the remaining balance. On October 26, the circuit court granted Rural's motion for summary judgment awarding it the remaining balance. The Wegners appeal the circuit court's summary judgments in favor of Rural. Additional facts will be incorporated in the analysis as necessary.

## DISCUSSION

¶ 11. The grant or denial of a motion for summary judgment is a matter of law that this court reviews de novo. *Torgerson v. Journal/Sentinel, Inc.*, 210 Wis. 2d

---

[4] The parties do not contest the circuit court's finding as to the value of the Wegners' home.

524, 536, 563 N.W.2d 472 (1997). We review summary judgment without deference to the circuit court, but benefiting from its analysis. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 314–15, 401 N.W.2d 816 (1987).

¶ 12. On appeal, the Wegners make five arguments. First, they argue Wis. Stat. § 632.05(2), the valued policy law, which requires the insurer to pay the policy limits for a total loss, applies when a homeowner has purchased more than one insurance policy on his or her dwelling and Wis. Stat. § 631.43(1), the pro rata statute, which gives effect to other insurance provisions in insurance policies, does not override the valued policy law. Second, the Wegners argue Rural has no legal claim to the West Bend proceeds. Third, they argue Rural is not entitled to summary judgment because they have affirmative defenses. Fourth, the Wegners argue they are entitled to prejudgment interest from West Bend. Fifth, they argue they are entitled to reasonable attorney fees. We disagree with each argument and affirm the circuit court's grant of summary judgment.

*1. Wis. Stat. § 632.05(2) and Wis. Stat. § 631.43(1)*

¶ 13. Turning to the Wegners' first argument, we conclude that the pro rata statute qualifies the valued policy law when the dwelling is insured by two or more policies without the consent of the insurers. The valued policy law governs the payment for total losses under an insurance policy for a dwelling. It states:

> Whenever any policy insures real property that is owned and occupied by the insured primarily as a dwelling and the property is wholly destroyed, without criminal fault on the part of the insured or the insured's assigns, the amount of the loss shall be taken conclusively to be the policy limits of the policy insuring the property.

429

Wis. Stat. § 632.05(2). The pro rata statute governs situations where two or more policies indemnify against the same loss. It states:

> When 2 or more policies promise to indemnify an insured against the same loss, no "other insurance" provisions of the policy may reduce the aggregate protection of the insured below the lesser of the actual insured loss suffered by the insured or the total indemnification promised by the policies if there were no "other insurance" provisions. The policies may by their terms define the extent to which each is primary and each excess, but if the policies contain inconsistent terms on that point, the insurers shall be jointly and severally liable to the insured on any coverage where the terms are inconsistent, each to the full amount of coverage it provided. Settlement among the insurers shall not alter any rights of the insured.

Wis. Stat. § 631.43(1).[5]

¶ 14. The valued policy law was "designed to discourage owners from over-insuring property while simultaneously thwarting insurers from collecting excessive premiums." *Seider v. O'Connell*, 2000 WI 76, ¶ 54, 236 Wis. 2d 211, 612 N.W.2d 659. In *Reedsburg Farmers Mutual Fire Insurance Co. v. Koenecke*, 8 Wis. 2d 408, 411, 99 N.W.2d 201 (1959), our supreme court held

---

[5] The pro rata statute is a slightly inaccurate term. The current version of the statute does not require that each insurer is liable for a pro rata share. Instead, it gives effect to the "other insurance provisions" of the respective policies. Insurers may be liable for pro rata shares of losses they indemnify against. Alternatively, one insurer may be liable for its policy's limits, while another is liable only for loss in excess of the first policy's limits. Pursuant to the statute, the insurers' respective shares of a loss are controlled by the language of the policies indemnifying the same loss.

multiple coverage can only exist where there is consent of insurance companies. While not binding, we find the reasoning of the federal district court in *Wisconsin Screw Co. v. Detroit Fire & Marine Ins. Co.*, 183 F. Supp. 183, 188 (E.D. Wis. 1960), still applicable and persuasive.[6] When interpreting the pro rata statute and the valued policy law, the district court reasoned:

> The *Reedsburg* case decided conclusively that the valued policy is not always applicable when the insured property has been totally destroyed, but that its application is qualified by [the pro rata statute]. [The pro rata statute] by its very terms limits the liability of the insurer to its proportionate share of the actual loss when the insured has other insurance on the same property as that covered by its policy "whether with or without knowledge or permission of the insuring company." Knowledge and consent are immaterial under that section. We believe therefore that the ruling in the *Reedsburg* case must be extended to include all cases where multiple policies of insurance cover the same property and that under that ruling [the pro rata statute] rather than the valued policy law governs the amount of recovery.

*Id.* We also consider persuasive, as the district court did, the following extensive quote in *Wisconsin Screw*:

> [It] seems . . . it was the intent of the legislature to modify and restrict the application and effect of the valued policy law to those situations in which the risk was insured by only one insuring company and that in

---

[6] The Wegners argue *Wisconsin Screw Co. v. Detroit Fire & Marine Ins. Co.*, 183 F. Supp. 183, 188 (E.D. Wis. 1960), is not applicable because it was decided before the most recent amendments to the pro rata statute. However, the purpose of the statute remains the same, and therefore, the reasoning is still applicable.

all cases where there was more than one insuring company then none of the insurers could effectively claim complete freedom from liability (whether or not their policy contained an "other insurance" clause) but each would be liable for its proportionate share of the insured's actual loss or damage.

To rule that [the pro rata statute] applies only to cases involving partial loss of the insured property would require reading into the statute words which are not there. To rule that [the valued policy law] is in no manner modified or restricted in its application by [the pro rata statute] would be completely ignoring the declared purpose of our valued policy statute and would effectively nullify [the pro rata statute] except in partial loss cases.

*Id.* at 189.

¶ 15. The valued policy law only dictates the amount of coverage that insurance companies are required to provide when a dwelling is totally destroyed. The plain language of the valued policy law does not provide, as the Wegners contend, that the insured is entitled to the limits of all policies insuring a dwelling. Instead, the pro rata statute specifically governs situations where two or more policies indemnify against the same loss. If we were to interpret the pro rata statute as not modifying the valued policy law, we would create a loophole to the pro rata statute allowing double recovery for the same loss that was not intended by the legislature. Therefore, absent the consent of Rural and West Bend, the Wegners are entitled to the full amount of their loss, but they are not entitled to the full amount of both policies if the combined limits exceed the actual loss.

¶ 16. Here, the record reveals neither company consented to dual coverage. The Wegners purchased the Rural policy to replace their West Bend policy. Before the tornado, the Wegners attempted to cancel the West Bend policy. West Bend was informed about the Rural policy the day after the tornado, when its claims adjuster met with David. Conversely, Rural first learned the West Bend policy was still in effect when its adjuster met with the Wegners the day after the tornado. The Wegners are not entitled to the full value of both policies because Rural and West Bend did not consent to such an arrangement and, therefore, the pro rata statute precludes their recovering twice for the same loss.

*2. Rural's legal claim to the West Bend proceeds*

¶ 17. In response to the Wegners' second argument, we conclude Rural has a legal claim to the West Bend proceeds. Rural's interest in the West Bend proceeds stems from the fact that it has paid for the total losses for which West Bend has some responsibility. Parties who are liable to another should, if possible, pay only their fair share of that liability, and the mechanism to ensure this can be subrogation, contribution, or indemnification. *McGee v. Bates*, 2005 WI App 19, ¶ 5, 278 Wis. 2d 588, 691 N.W. 2d 920. Because both Rural and West Bend are liable to the Wegners, Rural is the only party that has paid the Wegners, and Rural has paid more than its share, Rural is entitled to recover the remaining balance from West Bend.

¶ 18. The Wegners argue Rural cannot maintain a claim for subrogation and contribution because those

433

actions lie against different parties–subrogation against the Wegners and contribution against West Bend. West Bend argues the distinctions between subrogation and contribution claims are irrelevant in this case because the net effect is identical. *See id.* (stating contribution and subrogation "are different paths to the same destination"). We agree with West Bend.

¶ 19. If West Bend paid its portion of the loss ($164,285.13) directly to the Wegners, they would be overcompensated by $124,085.13. Rural would then be entitled to reimbursement via subrogation from the Wegners for that amount. *See Ruckel v. Gassner*, 2002 WI 67, ¶ 15, 253 Wis. 2d 280, 646 N.W.2d 11. If West Bend pays the Wegners the amount they need to be made whole ($40,200), and the remaining balance ($124,085.13) to Rural via contribution for the amount it has overpaid, all parties' net gains and losses are still the same. Regardless, if the method is subrogation or contribution, Rural is entitled to the $124,085.12 held in trust.

### 3. *The Wegners' affirmative defenses*

¶ 20. The Wegners argue Rural is not entitled to summary judgment because they have five affirmative defenses. Those five affirmative defenses are: (1) standing, (2) the voluntary payment doctrine, (3) accord and satisfaction, (4) waiver, and (5) estoppel. However, each affirmative defense is insufficient to deny Rural summary judgment.

¶ 21. First, the Wegners argue Rural does not have standing because Rural's claim is against West Bend. We disagree. Parties have standing if they show an injury that is related to their stake in the outcome of

the controversy. *Sandroni v. Waukesha County Bd.*, 173 Wis. 2d 183, 188, 496 N.W.2d 164 (Ct. App. 1992). Rural's injury is the amount it overpaid ($124,085.12). Rural's claim is related to and it has a stake in the outcome of this case. Rural insured the Wegners' home and had an agreement with West Bend to prorate the monies it paid the Wegners. Therefore, Rural has standing to bring its claim.

¶ 22. The Wegners also argue Rural lacks standing because it reinsured their policy. However, this argument is without merit. As the supreme court noted in *Franklin Mutual Insurance Company v. Meeme Town Mutual Fire Insurance Company*, 68 Wis. 2d 179, 181, 228 N.W.2d 165 (1975):

> Reinsurance . . . means one thing only—the ceding by one insurance company to another of all or a portion of its risks for a stipulated portion of the premium, in which the liability of the reinsurer is solely to the reinsured . . . and in which contract the ceding company retains all contact with the original insured, and handles all matters prior to and subsequent to loss.

The litigation between the Wegners and the insurance companies is a matter subsequent to the Wegners' loss. Thus, Rural has standing to resolve this claim arising out of the original policy.

■

¶ 23. Second, the voluntary payment doctrine does not apply to the facts of this case. The voluntary payment doctrine bars a party that paid a bill without contesting it from seeking repayment "merely on account of ignorance or mistake of the law." *Putnam v. Time Warner Cable*, 2002 WI 108, ¶ 13, 255 Wis. 2d 447, 649 N.W.2d 626 (citation omitted). The doctrine is inapplicable here because the Wegners do not have to

return any monies paid to them. Rural is seeking money from West Bend, not repayment from the Wegners.

¶ 24. Third, it is irrelevant whether Rural's payment to the Wegners was an accord and satisfaction. An accord and satisfaction is an agreement to discharge a disputed claim and constitutes a defense to an action to enforce that claim. *Flambeau Prods. Corp. v. Honeywell Info. Sys. Inc.*, 116 Wis. 2d 95, 112, 341 N.W.2d 655 (1984). Rural and West Bend had an agreement to prorate the coverage for the Wegners' loss. Rural's claim arises out of that agreement. Thus, any payment to the Wegners, regardless if it was an accord and satisfaction, does not preclude Rural's claim for the remaining balance in trust.

¶ 25. Fourth, Rural did not waive its claim for contribution from West Bend. Waiver is the intentional relinquishment of a right, either expressly or by conduct inconsistent with an intent to enforce that right. *See Perlick v. Country Mut. Cas. Co.*, 274 Wis. 558, 565–66, 80 N.W.2d 921 (1957). Here, all the communication between West Bend and Rural acknowledges mutual liability for the Wegners' loss from the beginning. This fact establishes Rural did not expressly or by its conduct waive its claims.

¶ 26. Finally, the Wegners cannot estop Rural from bringing this claim against West Bend. The elements of estoppel are: "(1) action or non-action, (2) on the part of one against whom estoppel is asserted, (3) which induces reasonable reliance thereon by the other . . . and (4) which is to his or her detriment."

436

*Village of Hobart v. Brown County*, 2004 WI App 66, ¶ 18, 271 Wis. 2d 268, 678 N.W.2d 402, *aff'd*, 2005 WI 78, 281 Wis. 2d 628, 698 N.W.2d 83. The party seeking to establish estoppel must prove all elements by clear and convincing evidence. *Yocherer v. Farmers Ins. Exch.*, 2002 WI 41, ¶ 25, 252 Wis. 2d 114, 643 N.W.2d 457. The Wegners argue estoppel based on their purchase of a more expensive home in reliance on receiving the limits of both policies. The Wegners may be able to establish the first two elements, but they have not established either of the last two elements by clear and convincing evidence. Principally, the Wegners have not established they acted in a reasonable manner when they purchased their second home for almost twice the value of their destroyed home when West Bend contested its coverage throughout. Furthermore, the Wegners have not established how they have been harmed by owning a more expensive home. Therefore, estoppel does not apply to the facts of this case.

### 4. Prejudgment interest

¶ 27. Turning to the Wegners' fourth argument, the Wegners are not entitled to prejudgment interest under WIS. STAT. § 807.01(4) from West Bend. The Wegners' argument that they are entitled to prejudgment interest is two-fold. They argue West Bend must pay prejudgment interest if liability is found under the valued policy law. Having already rejected the Wegners' claims under the valued policy law, we do not need to address their first claim for prejudgment interest. Alternatively, the Wegners argue they are entitled to prejudgment interest regardless if liability is found under the valued policy law because West Bend did not settle in accordance with the Wegners' offer to settle.

¶ 28. WISCONSIN STAT. § 807.01(4) governs the awarding of prejudgment interest where an offer of settlement was rejected:

> If there is an offer of settlement by a party under this section which is not accepted and the party recovers a judgment which is greater than or equal to the amount specified in the offer of settlement, the party is entitled to interest at the annual rate of 12% on the amount recovered from the date of the offer of settlement until the amount is paid. Interest under this section is in lieu of interest computed under §§ 814.04(4) and 815.05(8).

The statutory section allows prejudgment interest if there was an offer to settle that was not accepted and later a judgment is recovered that is greater than or equal to the settlement offer.

¶ 29. Here, the Wegners properly served a settlement offer of $150,999.99 plus costs to West Bend. West Bend refused and the Wegners eventually recovered $40,200. The Wegners did not recover a judgment against West Bend that is greater than or equal to the settlement offer. Therefore, they are not entitled to prejudgment interest.

5. *Attorney fees*

¶ 30. Finally, the Wegners are not entitled to recover reasonable attorney fees from West Bend. Absent contract or fraud, litigants are generally responsible for their own attorney fees. *Elliott v. Donahue*, 169 Wis. 2d 310, 323, 485 N.W.2d 403 (1992); *Kremers-Urban Co. v. American Employers Ins. Co.*, 119 Wis. 2d 722, 744, 351 N.W.2d 156 (1984). The Wegners argue they are entitled to attorney fees because West Bend

and Rural acted in bad faith by refusing to pay the limits of their policies. *See Reid v. Benz*, 2001 WI 106, ¶ 3, 245 Wis. 2d 658, 629 N.W.2d 262. However, attorney fees are not awarded in lawsuits to establish coverage. *See id.*, ¶ 16. The Wegners' lawsuit is an attempt to establish coverage under the West Bend policy. Therefore, the Wegners are not entitled to attorney fees because there is no statutory or contractual obligation on the part of West Bend or Rural to pay the fees for legal proceedings to establish coverage.

CONCLUSION

¶ 31. The circuit court correctly held the pro rata statute, WIS. STAT. § 631.43(1), modifies the valued policy law, WIS. STAT. § 632.05(2). It properly awarded Rural a portion of West Bend's payment for Rural's overpayment by granting Rural summary judgment because the Wegners' affirmative defenses had no merit. The circuit court correctly denied the Wegners prejudgment interest and attorney fees.

*By the Court.*—Judgments affirmed.