**In re Kurt JAYNES, Debtor.**

**No. 01–32642.**

United States Bankruptcy Court, W.D. Wisconsin.

July 18, 2007.

Matthew J. Reilly, Cedar Rapids, IA, for Debtor.

Swapna Vilas Deshpande, Madison, WI, for Trustee.

William J. Rameker, Madison, WI, trustee.

## MEMORANDUM DECISION

ROBERT D. MARTIN, Bankruptcy Judge.

On March 8, 2007, William J. Rameker, chapter 7 trustee, reopened this chapter 7 case which had been closed in 2001, to administer a single asset. The trustee argues that a lawsuit by Mr. Jaynes, the debtor, against alleged embezzlers was not disclosed on the debtor's bankruptcy schedules. He has reached an agreement with the defendants and proposes to settle the lawsuit for $16,000.

A Wisconsin state court in Crawford County has been hearing the debtor's lawsuit since 2003. Earlier this year that court halted its proceedings upon the defendants' dubious assertion that the suit was stayed by 11 U.S.C. § 362. Before doing so, however, the state court denied the defendants' motions for dismissal and summary judgment. In those motions, the defendants argued that the debtor's failure to disclose the lawsuit in his bankruptcy schedules estopped him from pursuing the lawsuit or, in the alternative, that the chapter 7 trustee was the real party in

interest (i.e., the debtor lacked standing). The debtor seeks a declaration that the chapter 7 trustee abandoned the lawsuit when he filed a "no asset" report and allowed the case to be closed.

There are three questions under advisement following a May 14 hearing on this matter. First, does the state court's decision preclude this court from issuing a declaratory judgment on whether the trustee abandoned the lawsuit? Second, should the trustee's proposed settlement of the lawsuit be approved? And third, should this court permit the state court to add the chapter 7 trustee as an involuntary plaintiff in the state court litigation?[1] I conclude that the state court found that Jaynes disclosed the lawsuit on his bankruptcy schedules and that the trustee had abandoned the lawsuit by not administering it before the case was closed. The state court's decision has preclusive effect and this court is bound by its ruling. The trustee cannot settle a lawsuit that he has abandoned. There is no apparent reason why the state court needs this court's permission to add the trustee as an involuntary plaintiff, though it is unclear why the state court wishes to do so.

The federal Full Faith and Credit Act, 28 U.S.C. § 1738, requires federal courts to give a state court judgment the same preclusive effect it would have in the state court. *See Dollie's Playhouse, Inc. v. Nable Excavating, Inc. (In re Dollie's Playhouse, Inc.)*, 481 F.3d 998, 1000–01 (7th Cir.2007), *reh'g denied*, 2007 U.S.App. LEXIS 12938 (7th Cir. May 30, 2007). The lawsuit was properly before the state court pursuant to 28 U.S.C. § 1334(b), which grants concurrent jurisdiction to state and federal courts over civil proceed-

---

1. The state court instructed the debtor to add both the chapter 7 trustee and the U.S. Trustee as involuntary plaintiffs. The U.S. Trustee is obviously not a proper party to that lawsuit, as Jaynes now concedes. I am denying Jaynes's motion to the extent it seeks joinder of the U.S. Trustee to the state court lawsuit.

ings arising under the Bankruptcy Code or arising in or related to a bankruptcy case. *E.g., Menk v. LaPaglia (In re Menk)*, 241 B.R. 896, 908 (9th Cir. BAP 1999). In Wisconsin, issue preclusion, also known as collateral estoppel, consists of two steps:

> In the first step, a circuit court must determine whether the issue or fact was actually litigated and determined in the prior proceeding by a valid judgment in a previous action and whether the determination was essential to the judgment.... In the second step, a circuit court must determine whether applying issue preclusion comports with principles of fundamental fairness.

*Estate of Rille v. Physicians Ins. Co.*, 2007 WI 36, ¶ 38, 300 Wis.2d 1, 728 N.W.2d 693 (Abrahamson, C.J.). "[F]or purposes of issue preclusion (as distinguished from merger and bar), 'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." Restatement (Second) of Judgments § 13; *Michelle T. v. Crozier*, 173 Wis.2d 681, 688, 495 N.W.2d 327 (1993) (Wisconsin generally follows the Restatement (Second) of Judgments' approach to issue preclusion). "If the basis of a decision is unclear, and it is therefore uncertain whether the issue was actually and necessarily decided in that litigation, then relitigation of the issue is not precluded." 18 Moore's Federal Practice— Civil § 132.03 (3d ed.2007). Comment g. to Restatement § 13 elucidates:

> [P]reclusion should be refused if the decision was avowedly tentative. On the

other hand, that the parties were fully heard, that the court supported its decision with a reasoned opinion, that the decision was subject to appeal or was in fact reviewed on appeal, are factors supporting the conclusion that the decision is final for the purpose of preclusion. The test of finality, however, is whether the conclusion in question is procedurally definite and not whether the court might have had doubts in reaching the decision.

The question of whether a denial of a motion to dismiss can be "sufficiently firm to be accorded preclusive effect" appears to be an issue of first impression in Wisconsin.

■■■■ Judicial estoppel is an affirmative defense that prevents a party who argues a position in court and prevails from subsequently arguing an inconsistent position.[2] *In re Hovis*, 356 F.3d 820, 823 (7th Cir.2004). "To apply, (1) the latter position must be clearly inconsistent with the earlier position; (2) the facts at issue must be the same in both cases; and (3) the party to be estopped must have prevailed upon the first court to adopt the position." *Urbania v. Cent. States*, 421 F.3d 580, 588 (7th Cir.2005). In bankruptcy, it most often arises when a debtor fails to disclose on his bankruptcy schedules a lawsuit that he can bring against a third party. Submitting the schedules without listing the lawsuit as an asset is inconsistent with subsequently prosecuting the lawsuit—an act that demonstrates ownership. When the bankruptcy court grants a discharge to the debtor, the debtor pre-

---

**2.** The U.S. Court of Appeals for the Seventh Circuit has sanctioned both judicial estoppel and standing as means of deterring bankruptcy fraud. *Cannon–Stokes v. Potter*, 453 F.3d 446 (7th Cir.2006) (judicial estoppel); *Biesek v. Soo Line R.R. Co.*, 440 F.3d 410 (7th Cir. 2006) (standing). Judicial estoppel is appropriate when the trustee in bankruptcy has abandoned a lawsuit; standing is appropriate when the trustee has not. *Biesek*, 440 F.3d at 413. Because the parties to the state court litigation disagreed as to whether the trustee had abandoned the lawsuit, the state court considered both judicial estoppel and standing.

vails in his "position" that the lawsuit is unavailable for administration and distribution to his creditors. *E.g., Cannon–Stokes*, 453 F.3d at 448. The two elements that the state court would have needed to find to dismiss Jaynes's lawsuit were thus (1) nondisclosure of the lawsuit, and (2) a subsequent attempt to pursue the same lawsuit. But the state court refused to find the first of these.

█ In Schedule B ("Personal Property") in the bankruptcy case, Jaynes disclosed that he had a 55 percent interest in a business called Hermsen Plumbing & Heating, but did not list a value of that interest, instead writing "See Item # 20." Item number 20 on the same schedule stated, "Michael & Kim Erdenberger embezzled funds from Hermsen Plumbing & Heating. An investigation is continuing. If funds are ever located, there is a possibility of recovery."

This court granted Jaynes a discharge on August 30, 2001. The chapter 7 trustee, William J. Rameker, filed a "no asset" report on December 13, 2001, indicating that he had examined the debtor's finances and found no unencumbered, non-exempt assets that could be distributed to creditors. The case was closed one week later. Nearly two years thereafter, Jaynes sued the Erdenbergers and two alleged co-conspirators in state court, seeking damages for breach of fiduciary duty, conversion, conspiracy, and others relating to the defendants' alleged embezzlement. The trustee admits that the basis for the lawsuit was scheduled, but argues it was listed as an asset of the business.

Judicial estoppel was actually litigated and determined in the state court. The deluge of pleadings the parties submitted to the state court on this issue leaves no doubt that they actually litigated it. And, Judge Curry repeatedly and unambiguously rejected the defendants' judicial estoppel theory, leaving equally little doubt that he actually adjudicated it, and struck it with prejudice. Transcr. at 91 11. 12–14; also at 92–93, 93 11. 16–20, 94 11. 16–18, 97 11. 20–25. His finding that Jaynes disclosed the lawsuit on his bankruptcy schedules was explicitly essential to striking the defense: "As to judicial estoppel I am finding that that fails because the claim was disclosed in the bankruptcy." *Id.* at 91 11. 12–14.

█ The same is true of the affirmative defense that Jaynes lacked standing to pursue the lawsuit. For a former chapter 7 debtor to have standing to bring a lawsuit that he could have brought prior to the bankruptcy filing, the trustee must have abandoned the lawsuit. "Unless the court orders otherwise, any property scheduled under section 521[ (a) ](*l* ) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title." 11 U.S.C. § 554(c). "[P]roperty of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate." § 554(d).

To show that Jaynes lacked standing because the lawsuit belonged to the estate, the defendants would have needed to show two elements: first, that the lawsuit was property of the estate; and second, that the trustee did not abandon it. I think it is likely that the state court found the lawsuit was property of the estate; however, the transcript is confusing on this point. But the court held in no uncertain terms that the trustee abandoned the lawsuit.

Whether the lawsuit was property of the estate depends largely on whether Jaynes listed it as a personal claim or as a derivative suit that he could only bring on the business's behalf. The parties devoted

significant litigation resources to this question. The defendants contended that the lawsuit was derivative under *Rose v. Schantz*, 56 Wis.2d 222, 201 N.W.2d 593 (1972), because

> [e]ven if [a] stockholder suffers a harm that flows from the injury to the corporation, such as a reduction in the value of the stock, such an action must be pursued by the corporation or by the shareholder in the form of a derivative action. A wrong that affects the corporation itself or the stockholders generally [ ] gives rise to a cause [of] action on the part of the corporation.

Transcr. at 16–17. (The defendants also argued, unsuccessfully, that Jaynes had not upheld the formalities required to bring a derivative lawsuit.) Jaynes's attorney responded that Jaynes was bringing the lawsuit not only derivatively to compensate the business for the defendants' alleged embezzlement, but also personally to compensate him for an injury to him as an individual, distinct from the injury to the business. *Id.* at 59. He alleged that the defendants pushed him out of the business (even though he was the majority shareholder) by holding secret meetings and thereby making decisions without him. *Id.* at 34.

It is not entirely clear whether the state court found that the lawsuit was a derivative action or a personal one. The likely reason for the ambiguity is that the state court identified some of the claims as derivative and some as personal: "it was a personal claim ... it may also be a claim of the corporation." *Id.* at 93 ll. 21, 23–24. It is also possible that Jaynes's interest in the corporation gave him an interest in a derivative suit he was bringing on behalf of the corporation, and that that interest became property of the estate when he filed chapter 7.

The state court made its determinations on standing and judicial estoppel with sufficient finality to give them preclusive effect. Even though the state court's ruling denied the defendants' motions for dismissal and summary judgment and was therefore non-final for purposes of appeal, it had the effect of striking the affirmative defenses of lack of standing and judicial estoppel. See Wis. Stat. § 802.02(3) (estoppel is an affirmative defense); *Wegner v. W. Bend Mut. Ins. Co.*, 2007 WI App. 18 ¶ 20, 298 Wis.2d 420, 728 N.W.2d 30 (lack of standing is an affirmative defense). Judge Curry found the defendants' allegation of nondisclosure insufficient as a matter of law to form the basis for standing or judicial estoppel:

> I think the fact that he mentions the claim is the important part, not who he can sue for the claim.... The important part of the case law is that the claim has to be mentioned and [Jaynes] did mention the claim and the claim was then considered by the trustee in bankruptcy who then decided that it was to[o] expensive to pursue and probably was valueless in his opinion.

Transcr. at 92 ll. 2–4, 7–13. As a result, Jaynes was permitted to pursue all of the relevant causes of action, including breach of fiduciary duty, conversion, and conspiracy. The parties were fully heard and the court made specific and detailed findings. The conclusion was procedurally definite: the transcript shows that Judge Curry had no plans to revisit the issue of standing.

The question remains whether it would be fundamentally fair to apply issue preclusion under the circumstances. "[F]ederal and state courts balance competing goals of judicial efficiency and finality, protection against repetitious or harassing litigation, and the right to litigate one's claims before a jury when deciding whether to permit parties to collaterally

estop one another." *Michelle T.*, 173 Wis.2d at 688, 495 N.W.2d 327. Wisconsin courts employ a series of factors to determine whether issue preclusion would be fundamentally fair:

> (1) could the party against whom preclusion is sought, as a matter of law, have obtained review of the judgment; (2) is the question one of law that involves two distinct claims or intervening contextual shifts in the law; (3) do significant differences in the quality or extensiveness of proceedings between the two courts warrant relitigation of the issue; (4) have the burdens of persuasion shifted such that the party seeking preclusion had a lower burden of persuasion in the first trial than in the second; or (5) are matters of public policy and individual circumstances involved that would render the application of collateral estoppel to be fundamentally unfair, including inadequate opportunity or incentive to obtain a full and fair adjudication in the initial action?

*Id.* at 689, 495 N.W.2d 327.

Since they have had their day in court, it would be fundamentally fair to the state court defendants to preclude relitigation of abandonment in this court. It is only somewhat less clear that it would be fair to the trustee and the bankruptcy estate. The trustee was not a party to the state court litigation. However, Jaynes's attorney sent him a letter on July 31, 2006 that expressly informed him of the lawsuit, the value of the lawsuit, and the defendants' argument that the lawsuit belonged to the bankruptcy estate. The trustee made no effort to intervene. Instead, he allowed himself to be deposed—for which he billed the defendants $1,717.75—and sat on the sidelines while the parties debated whether the lawsuit was disclosed and whether it was a personal claim or a derivative one.

That strategy made sense. The trustee declined to pursue the lawsuit in 2001 because "[i]n [his] opinion, the potential at that time for recovering anything for the benefit of the Jaynes' Bankruptcy Estate was very minimal and did not warrant [the trustee's] continued pursuit." Letter from Wm. J. Rameker to Matt J. Reilly, Aug. 1, 2006, Debtor's Ex. 2 at 2. In fact, at oral argument, counsel for the trustee stated "We have no reason to believe the trustee did not follow his standard routine procedure to try to ascertain if that was a corporate obligation or one by the individual—and if a corporate obligation, whether the individual through his stock would ever have any equity in those claims." The trustee had little additional incentive in 2006 to involve himself in the parties' lavishly expensive state court litigation, as long as his assessment of the case was proving accurate. When the state court held that Jaynes *was* entitled to pursue part of the lawsuit as a personal claim, the trustee sought to retake the lawsuit for the bankruptcy estate.

But assuming that the trustee made the calculated decision not to intervene in the state court litigation, there is nothing unfair about precluding him from relitigating its result. To the contrary, the other parties spent tens of thousands of dollars on litigating issues that obviously had the potential to affect the bankruptcy estate, while he watched. The only reason he now has a greater incentive to litigate the issue than he did a year ago is that the fighting over whether the claim is personal to Jaynes (rather than derivative) has largely concluded. The claims are the same; the burdens of proof and persuasion are the same; the amount at stake is the same.

Now it is conclusively established in this litigation that Jaynes disclosed the lawsuit on his bankruptcy schedules and that the

trustee abandoned it. This court need not affirm that holding and cannot reverse it.

I can find no authority that requires a bankruptcy court to grant permission for a state court to add a chapter 7 trustee as an involuntary plaintiff, at least when (as here) the automatic stay has expired. To the contrary, title 28 of the U.S.Code provides: "Trustees . . . may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property." 28 U.S.C. § 959(a).

■■■ Importantly, the state court has already determined that the trustee should be added to the litigation. The court applied but did not cite Wis. Stat. § 803.03(1):

> (1) PERSONS TO BE JOINED IF FEASIBLE.
> A person who is subject to service of process shall be joined as a party in the action if:
> (a) In the persons absence complete relief cannot be accorded among those already parties; or
> (b) The person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the persons absence may:
>   1. As a practical matter impair or impede the persons ability to protect that interest; or
>   2. Leave any of the persons already parties subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of his or her claimed interest.

Judge Curry stated:

> I am . . . making the trustee in bankruptcy a necessary party so that the trustee in bankruptcy is an involuntary necessary party; so he will be able to decide whether or not he feels that this is a matter that he should take jurisdiction over in federal court in bankruptcy, because of the allegation made.

Transcr. at 90 11. 16–23. The finding that the trustee was a necessary party under Wis. Stat. § 803.03 is res judicata for purposes of this litigation.

That is true even though the conclusion appears incorrect. The state court unambiguously found that the trustee had abandoned the lawsuit. To those of us who practice bankruptcy law on a daily basis, it is obvious that a trustee ceases to become the real party in interest or a necessary party to a lawsuit that he has abandoned. But I do not view the state court's confusion over the *effect* of abandonment as belying any confusion over whether abandonment in fact occurred. Judge Curry said that he was unclear as to procedure, and only procedure:

> I am ordering that the Complaint be amended for a second time to include the corporation and I said the bankruptcy trustee but I am not sure if that's possible, but I think that it is, to name the bankruptcy trustee as a party with a potential interest in the case and therefore let him decide if he wants to participate or what action that he thinks that he needs to bring. I am not sure how to do that because I have never—that may be a problem. But I think that he needs to be made a party to this action to give him a chance to get into this thing and see if he wants to decide not to abandon any of these claims. I don't think that he will want to get back into the case but he should have that option by being named as a party.

Transcr. at 99–100. Abandonment of partially disclosed assets and reopening a closed case to administer them are difficult subjects even for specialized bankruptcy courts, let alone courts of general jurisdic-

tion. The state court was unable to determine whether a trustee could "unabandon" assets, and invited the trustee to litigate that question. In doing so, the court did not undermine its conclusion that the trustee had abandoned the lawsuit, even though that conclusion seems at odds with determining that the trustee was a necessary party to the lawsuit.

The state court's determination of abandonment is binding on this court and on the trustee under principles of issue preclusion. Because the trustee abandoned the lawsuit, he cannot settle it. The trustee's motion must be denied. Because the automatic stay terminated upon abandonment of the lawsuit, § 362(c), the debtor's motion for relief from stay is moot and must be denied as well. An order will be entered accordingly.

### ORDER

A trial having been held in this case on May 14, 2007, and the Court having reached the conclusions of law contained in the memorandum decision filed this date, it is hereby ORDERED that:

1. The chapter 7 trustee's request for approval of a proposed settlement of the lawsuit *Jaynes v. Erdenberger et al.*, 03–CV–147 (Wis. Cir. Ct. Crawford County), is DENIED; and

2. The debtor's motion for relief from the automatic stay, including all relief sought in that motion, is DENIED.