Bernard JOHNSON and Kathryn Johnson,
Plaintiffs-Respondents,

v.

MT. MORRIS MUTUAL INSURANCE COMPANY,
Defendant-Appellant.†

Court of Appeals

*No. 2010AP2468. Submitted on briefs April 11, 2011.
—Decided December 1, 2011.*

2012 WI App 3

(Also reported in 809 N.W.2d 53.)

† Petition for Review denied 4/23/12.

327

On behalf of the defendant-appellant, the cause was submitted on the briefs of *James A. Baxter* and *Douglas M. Raines* of *von Briesen & Roper, S.C.*, Milwaukee.

On behalf of the plaintiffs-respondents, the cause was submitted on the briefs of *Peter J. Culp* and *Heath G. Mynsberge* of *Dempsey, Williamson, Kelly & Hertel, LLP,* Oshkosh.

Before Lundsten, P.J., Higginbotham and Sherman, JJ.

¶ 1. SHERMAN, J. Mt. Morris Mutual Insurance Company appeals from an order for partial summary judgment in favor of Bernard Johnson and Kathryn Johnson, on the issue of whether the Johnsons were entitled under WIS. STAT. § 632.05(2) (2009–10),[1] to the policy limits of an insurance policy in effect when a house they owned was destroyed by an explosion and fire. Mt. Morris contends that because the Johnsons were not living in the house at the time it was destroyed, the house was neither "occupied," nor a "dwelling," as required by § 632.05(2). We agree with the circuit court that, although the house was not the Johnsons' primary residence, it was a "dwelling" and the

---

[1] WISCONSIN STAT. § 632.05(2) provides:

(2) TOTAL LOSS. Whenever any policy insures real property that is owned and occupied by the insured primarily as a dwelling and the property is wholly destroyed, without criminal fault on the part of the insured or the insured's assigns, the amount of the loss shall be taken conclusively to be the policy limits of the policy insuring the property.

All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

Johnsons did "occupy" it, as those terms are used in the statute. We therefore affirm.

## BACKGROUND

¶ 2. The Johnsons purchased a house in Neshkoro, Wisconsin, in January 2007, from an elderly woman who occupied the house until she entered a nursing home. Originally, the house was purchased as an investment; however, in the spring of 2007, the Johnsons decided to make the property their retirement home. At the time, the Johnsons "did not believe that the [Neshkoro house] was fully habitable to the point [that they] would have stayed the night," and they undertook "substantial renovations" of the property in order to make it habitable. The Johnsons did all of the renovation work themselves, along with "minor help from a few others."

¶ 3. On September 26, 2007, the Neshkoro house was destroyed in an explosion and fire. When the house was destroyed, the Johnsons had never spent the night in the home, but had been "on the Property on an almost [] daily basis during August and September." The Johnsons never rented out the Neshkoro house, nor was it occupied by any other person while they owned it.

¶ 4. At the time of the explosion, Mt. Morris insured the Neshkoro house with policy limits of $80,000 on the dwelling, $8,000 on other structures, and $40,000 on personal property. Mt Morris, however, declined to pay the insurance policy's limits for a total loss, instead paying $35,937.58, which represented $25,054.41 for the actual value of the dwelling, $6,263.60 for debris removal and $5,119.57 for unscheduled personal property, less the $500 deductible.

¶ 5. The Johnsons brought suit against Mt. Morris, seeking a declaratory judgment that they were entitled to the policy limits for a total loss, under Wis. Stat. § 632.05(2). Mt. Morris moved for an order of partial summary judgment, declaring that the house "was not 'occupied by the insured primarily as a dwelling' " and that "[Wis. Stat.] § 632.05(2) do[es] not apply to [the Johnsons'] case." Mt. Morris argued that the Johnsons had not "occupied" the Neshkoro house because they had not lived in or used it as a place of habitation. Mt. Morris further argued that the house was not a "dwelling" because it was not a building or construction used for a residence.

¶ 6. The circuit court denied Mt. Morris's motion for partial summary judgment and *sua sponte* entered summary judgment in favor of the Johnsons on the issue of whether Wis. Stat. § 632.05(2) applied. Consequently, the court ordered Mt. Morris to pay the Johnsons the policy limits on the dwelling. Mt. Morris appeals.

## DISCUSSION

¶ 7. Mt. Morris contends that the circuit court erred in finding that the Johnsons "occupied" the Neshkoro property and that the property constituted a "dwelling" within the meaning of Wis. Stat. § 632.05(2), and in entering summary judgment in favor of the Johnsons on the issue of whether § 632.05(2) applies in this case.

██ ██

¶ 8. "The grant or denial of a motion for summary judgment is a matter of law that this court reviews de novo." *Wegner v. West Bend Mut. Ins. Co.*, 2007 WI App 18, ¶ 11, 298 Wis. 2d 420, 728 N.W.2d 30. The method-

ology for reviewing summary judgment has been set forth numerous times and we need not review it here. *See Drangstviet v. Auto-Owners Ins. Co.*, 195 Wis. 2d 592, 598, 536 N.W.2d 189 (Ct. App. 1995). A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2). We construe all facts and reasonable inferences in the nonmoving party's favor. *Strozinsky v. School Dist. of Brown Deer*, 2000 WI 97, ¶ 32, 237 Wis. 2d 19, 614 N.W.2d 443.

■

¶ 9. This case requires us to interpret WIS. STAT. § 632.05(2) to determine whether the Johnsons' Neshkoro property was a "dwelling" and whether the Johnsons "occupied" it within the meaning of that statute. Statutory construction is an issue of law, subject to de novo review. *State v. Cole*, 2000 WI App 52, ¶ 3, 233 Wis. 2d 577, 608 N.W.2d 432.

■

¶ 10. "The goal of statutory construction is to ascertain and give effect to the intent of the legislature." *Lake City Corp. v. City of Mequon*, 207 Wis. 2d 155, 162, 558 N.W.2d 100 (1997). To achieve this goal, we first resort to the plain language of the statute, *id.*, which we give its common, ordinary, and accepted meaning, unless the words are technical or specially defined, in which case we will give those words their technical or special definitions. *State v. Warbelton*, 2008 WI App 42, ¶ 13, 308 Wis. 2d 459, 747 N.W.2d 717. If the meaning of a statute is plain and unambiguous, we apply that plain meaning. *Id.* Overriding all of this is the understanding that we give deference to the policy choices

made by the legislature in enacting the law, and we consider the scope, context and structure of the statute. *Id.*

¶ 11. By its express language, WIS. STAT. § 632.05(2) requires an insurer to pay its policy limits to an insured whose "owned and occupied . . . dwelling" is "wholly destroyed." *See Kohnen v. Wisconsin Mut. Ins. Co.*, 111 Wis. 2d 584, 585, 331 N.W.2d 598 (Ct. App. 1982). Mt. Morris argues that § 632.05(2) does not apply in this case because "[t]he Johnsons never 'occupied' the Neshkoro Property and the Neshkoro Property never constituted a 'dwelling.' "

¶ 12. This court has previously concluded that WIS. STAT. § 632.05(2), read as a whole, is clear and unambiguous and that to determine the legislature's intent regarding § 632.05(2), we must give the terms "occupied" and "dwelling" their common and ordinary meaning, which may be ascertained by reference to recognized dictionaries. *See Drangstviet*, 195 Wis. 2d at 599–600.

¶ 13. In *Drangstviet,* this court applied the following definition of "dwelling" from BLACK'S LAW DICTIONARY 505 (6th ed. 1990): "The house or other structure in which a person or persons live; a residence; abode; habitation . . . . Structure used as [a] place of habitation." *Drangstviet*, 195 Wis. 2d at 600. Mt. Morris bases its argument that the Neshkoro house is not a dwelling on the definition in *Drangstviet,* arguing that the property was not a "dwelling" because, at the time the house was destroyed, nobody was living in it. We disagree.

¶ 14. The Neshkoro house is plainly a "dwelling." It was occupied as a residence by the previous owner. It has a kitchen, a bathroom and bedrooms and nothing in

the record suggests the Johnsons turned the building into something other than a dwelling. The fact that the building was being renovated and refurbished does not affect its status as a dwelling. It would be unreasonable to say that a dwelling ceases to be a dwelling while its owners are improving it for the very purpose of using it as a dwelling.

¶ 15. The more interesting issue in this case is whether the building was "occupied" within the meaning of the total loss statute. In *Drangstviet,* this court also applied the following definition of "occupy" from BLACK'S LAW DICTIONARY 1079 (6th ed. 1990) to the term "occupied" in WIS. STAT. § 632.05(2): "To take or enter upon possession of; to hold possession of; to hold or keep for use; to possess; to tenant; to do business in; to take or hold possession. Actual use, possession, and cultivation." *Drangstviet,* 195 Wis. 2d at 600.

¶ 16. Mt. Morris urges that we only consider the definition of the term "occupy" in WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1561 (unabr. 1976), which this court cited in *Drangstviet*: "to take up residence in . . . to reside in as an owner or tenant." However, our interpretation of the term "occupied" in WIS. STAT. § 632.05(2) in *Drangstviet* was not as narrow as that urged upon us by Mt. Morris. We concluded in *Drangstviet* that "[r]ead as a whole, it is clear that the statute applies to insureds, who are persons living in *or actually using* a residence or place of habitation." *Id.* at 600 (emphasis added). This interpretation is consistent with the guidance of the Wisconsin Supreme Court that "[t]he legislature foresaw an expansive application of WIS. STAT. § 632.05(2). [WIS. STAT. §] 600.12(1) now provides: '[u]nless otherwise provided, chs. 600 to 655 shall be liberally construed to achieve the purposes

stated therein.' " *Seider v. O'Connell*, 2000 WI 76, ¶ 61, 236 Wis. 2d 211, 612 N.W.2d 659. Thus, the "occupied" requirement can be met by use of the dwelling by an insured even if that use is not actually living in the dwelling at the time of the occurrence.

¶ 17. At the same time, it would be unreasonable to interpret the term "occupied" in the statute as including any use by the insured. The statutory language requires that the property be "occupied by the insured primarily *as a dwelling*." Wis. Stat. § 632.05(2) (emphasis added). Thus, the insured's use must bear a relationship to actually living in the dwelling. That relationship exists here.

¶ 18. It is undisputed that the Johnsons "were doing construction [on the Neshkoro house] in order to move into the premises," and the Johnsons stated that they had been "on the Property on an almost [] daily basis" while they were "doing construction." Mt. Morris focused on the fact that the Johnsons had never spent the night sleeping in the house, which both parties also stipulated, to support its argument that the house was not occupied. However, as we have explained, whether or not a person ever slept in a house is not dispositive of whether they occupied it.

¶ 19. It would be unreasonable to conclude that a dwelling ceases to be occupied as a dwelling if the people living there temporarily vacate the dwelling for renovations, any more than if they simply go on an extended vacation. And, we discern no reason why the result should be different if a policyholder purchases property and engages in some renovations before moving in.

¶ 20. Having concluded that the Neshkoro house was "occupied by the insured primarily as a dwelling" under Wis. Stat. § 632.05(2), there was no material

issue of fact regarding whether § 632.05(2) applies in this case. The Johnsons were therefore entitled to summary judgment on that issue. Accordingly, we affirm.

*By the Court.*—Order affirmed.