STATE EX REL. CITY OF MADISON, Respondent, vs. WALSH and others, Town Supervisors, Appellants.

SAME, Respondent, vs. McCoy and others, Town Supervisors, Appellants.

*May 18—June 15, 1945.*

*Lowell T. Thronson* and *Randolph R. Connors,* both of Madison, for the appellants.

For the respondent there was a brief by *Harold E. Hanson,* city attorney, and *Wm. J. P. Aberg* of Madison, *amicus curiæ,* and oral argument by *Mr. Hanson.*

FAIRCHILD, J.   The three propositions presented on this appeal are:

1. The motion of the plaintiff that the appeal be dismissed because of failure to furnish a bond.   This matter is effectively disposed of by the statute itself, sec. 274.26, Stats., which provides that a municipality in taking an appeal need not furnish a bond.   The parties the plaintiff sought to coerce by *mandamus* are town officers and had they any authority to act it would be as officers of the towns.   The motion to dismiss is denied.

2. The question is raised as to the propriety of issuing the writ of *mandamus.*   We are of the opinion that *mandamus*

does not lie. The towns as parties to these proceedings may default if they choose in the matter of attending the apportionment meetings. *Mandamus* cannot issue unless an officer has failed to perform a duty imposed upon him by law. *LaForge v. State Board of Health* (1941), 237 Wis. 597, 602, 296 N. W. 93; *Bjordal v. Town Board* (1939), 230 Wis. 543, 284 N. W. 534. If there is any duty on the part of the town boards to participate in such meetings it must be derived from sec. 66.03 (5), (6), Stats. That section reads:

"66.03 (5) *Apportionment board.* The boards or councils of the municipalities, or committees, thereof selected for that purpose, acting together, shall constitute an apportionment board. When any municipality is dissolved by reason of all of its territory being so transferred the board or council thereof existing at the time of such dissolution shall for the purpose of this section, continue to exist as the board or council of such municipality.

"(6) *Meeting.* The board or council of the municipality to which the territory is transferred shall fix a time and place for meeting and cause a written notice thereof to be given the clerk of the municipality from which such territory is taken at least five days prior to the date of the meeting. *The apportionment may be made only by a majority of the members from each municipality who attend,* and in case of committees, the action must be affirmed by the board or council so represented."

The statute does not provide that the members of the town boards must attend. Nor does it specify the number of members of the board who must attend. The provison for an apportionment by a majority of those *who attend,* implies that if a town chooses not to participate, a majority of those who do, shall have the authority to make the apportionment. It is true that the statute says the boards "acting together" shall so act but this has reference only to the method of proceeding if the municipalities choose to participate. There is nothing in the statute to prevent a municipality from defaulting, abdicating

its right to participate, or to allow the other muncipality to act alone. Under such circumstances, *mandamus* is not the proper remedy.

3. The next question is as to the validity of the petition for annexation.

The city of Madison insists that the towns are precluded from raising the question of the validity of the petition in the annexation proceedings by virtue of sec. 62.07 (3), Stats., which provides that the validity of the proceedings shall not be collaterally attacked, nor in any manner called in question in any court unless the proceedings therefor be commenced before the expiration of ninety days from the passage of the ordinance of annexation. The law requires the circulation and filing of a valid petition to give the common council jurisdiction in an annexation matter. The towns are entitled at any time to attack the proceedings by a showing that the original petition filed with the council was invalid. *Wilson v. Sheboygan* (1939), 230 Wis. 483, 283 N. W. 312; *State ex rel. Thompson v. Eggen* (1932), 206 Wis. 651, 238 N. W. 404, 240 N. W. 839. Hence the question of whether the petition was valid in its inception is properly raised here, as it was considered and decided below.

The growth of communities causing the necessity and convenience of changing boundaries of territory became apparent to the legislature. That department of our government recognizing the probability that from time to time such alterations would be suggested by interested parties has provided in the way of regulation, methods for zoning within territory and for detaching from present limits certain property and annexing areas to others.

These appeals grow out of annexation proceedings initiated by the city of Madison April 8, 1944. Notices were posted in the townships affected, giving notice that the annexation petition would be circulated in the proper area. The petition was "caused to be circulated" May 10th, but was not concluded

until after the forty-five days had passed. July 3d seems to be as early as it may be said the petition was completed.

In the plan for annexation thus provided by the legislature a city is to be permitted to annex adjacent territory by presenting a petition to the council "signed by a majority of the electors in such adjacent territory and by the owners of one third of the taxable property thereof according to the last tax roll." Sec. 62.07 (1) (a), Stats. The legislature, in order that all interested individuals and taxpayers may be put on guard, fixed a time for giving notice of the initiation of the proceedings. "No petition for annexation shall be valid unless at least thirty days and not more than forty-five days before any such petition is caused to be circulated, a notice shall be posted in at least eight public places in the municipality in which the adjacent territory is located, and a copy of such notice published in a newspaper of general circulation within the county in which said adjacent territory is located, at least fifteen days prior to the time when such petition is caused to be circulated, such notice to set forth that an annexation petition is to be circulated, and including an accurate description of the territory involved." Sec. 62.07 (1) (a).

The point particularly covered by this legislation is the giving of notice; the time thereof is fixed but the time of completion and filing of the petition is not fixed. The learned trial judge in treating with this point said:

"Assuming, however, that the record were such as to require a finding that the petition was still in circulation on July 3d, it still would not avail defendants. The statute does not provide that the circulation of the petition be completed within forty-five days. I am convinced that the expression 'cause to be' means to 'begin' or 'commence.' "

It is asserted by the towns that this section specifies some sort of requirement that the circulation of the petition be complete not more than forty-five days after the required notices are posted. We are unable to assent to that construction of the statute for the following reasons: (1) The term "cause to

be circulated" would, if taken in its normal and natural meaning, refer to the commencement of circulation, that is to say, if I cause something to be circulated, I initiate circulation; (2) the construction insisted upon by the towns would condition the validity of the petition upon an extremely uncertain event (namely, the time of completion) in the face of a strong presumption that the legislature meant to tie the validity of the proceedings to a definite and easily ascertained act, namely, the commencement of circulation; (3) the obvious purpose of the section is carried out if the commencement is deferred at least thirty days after the notice and not more than forty-five days because this gives to the electors a chance to discuss matters and to come to a conclusion as to the desirability of signing a petition; (4) the construction insisted upon by the towns ascribes a different meaning to the term "cause to be circulated" in its relation to the thirty days from that in connection with the forty-five-day limitation; (5) a provision for publication in a newspaper of general circulation at least fifteen days prior to the time when such petition is caused to be circulated requires that such notice set forth that an annexation petition "is to be" circulated. To give the term "cause to be circulated" the meaning contended for by the towns would require the conclusion that the phrase was used in a different sense in different parts of the section because its plain meaning in connection with the newspaper notice is that contended for by the city of Madison since the notice must be to the effect that the petition is to be circulated. To come to any other conclusion with respect to the newspaper notice would produce a rather patent absurdity. If notices must be posted at least thirty days before the complete circulation of the petition, and if newspaper notices must be published at least fifteen days prior to the complete circulation, then there is no effective notice to the public a reasonable time in advance of the circulation. The circulation is limited in every case to fifteen days and the effectiveness and usefulness of the posting of notices is materially impaired. It is clear that the term "cause

to be circulated" refers to the commencement of circulation; (6) we are fortified in the foregoing conclusions by the consideration that the section of the statute examined deals fundamentally with notices and that the limitations on time of circulation are all in support of the primary purpose to secure notice that circulation of the petition is to occur. No time is fixed for the filing of the petition. A time for taking subsequent steps with relation to circulation and filing of the petition rests in reason and good faith. We may well quote again from Judge GEHL's opinion where he says: "The purpose of the forty-five-day limitation is to render it impossible to post the notices, then wait an unreasonable time and until the matter has been forgotten, and then proceed as is ordinarily done with petitions to obtain the signatures of disinterested and uninformed people. Of course, if circulation were commenced within the forty-five-day period and then delayed unreasonably so as to make it apparent that the delay resulted from a purpose to 'put one over' the court would have to find noncompliance, not because of time but because of fraud." In the *Wilson Case, supra,* with reference to the forty-five-day period, there was no attempt to do more than summarize the statute. There is nothing in the opinion holding that the phrases relating to the forty-five-day limit means that the petition must be circulated and filed within that time.

The towns also sought in the lower court to contest the validity of the annexation by showing that the town boards of the respective towns had conducted a referendum after the passage of the annexation ordinance in which the vote was overwhelmingly against the detachment of said territories. The trial court, however, correctly held that there is no provision in the statute for a referendum in the case of annexation procedure. That rule was recognized in the *Wilson Case, supra,* and the minor amendment to the statute by ch. 357, Laws of 1939, was not intended to change that ruling. The only purpose of the amendment was to clarify the detachment procedure and allow detachment from one city and at-

tachment to another city or village. The legislation contem-plates different methods of proceeding in detachment and annexation proceedings and the provisions as to one cannot be applied to the other.

Our conclusion is that *mandamus* cannot lie because it is not a proper remedy in this instance. We hold that the annexation petition was validly circulated.

*By the Court.*—The judgments are affirmed wherein are determined the validity of the annexation proceeding, and reversed as to the *mandamus* proceeding; and the cause is remanded for further proceedings in accordance with this opinion. Appellants to have costs.

FOWLER, J. (*dissenting*). I dissent because the proviso in sec. 62.07 (1) (a), Stats., declares that "no petition for annexation shall be valid unless at least thirty days and not more than forty-five days before any such petition is *caused to be circulated,* a notice shall be posted," etc. Admittedly more than forty-five days from the time of posting the notice elapsed before the circulation of the petition was completed. It seems to me that the proviso in the statute cited means that the circulation of the petition must be done, that is completed, within the time limits specified. Circulation, not causation, that is circulation of the petition, not causation of its circulation within the time specified, is what the expression above italicized is aimed to compel in order to validate annexation. To make validation depend on the time of causation rather than the time of circulation is to ignore the purpose of the proviso, which is to compel the procuring of signatures. Provisos in statutes must be given effect according to their purpose and intent. Giving the instant proviso such effect makes the annexation void.

I think judgment should have been entered declaring the petition for annexation void, annulling the proceedings so far taken pursuant to it, and enjoining further proceedings pursuant thereto.