Jane DRANGSTVIET, in her capacity as Personal Representative and Special Administrator of the Estate of Dale V. Moffet, Deceased, Plaintiffs-Appellants†

v.

AUTO-OWNERS INSURANCE COMPANY, Defendant-Respondent.

Court of Appeals

*No. 95–0053. Submitted on briefs June 19, 1995.—Decided June 27, 1995.*

(Also reported in 536 N.W.2d 189.)

†Petition to review denied.

592

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Robert A. Kennedy, Jr.* of *Kennedy Law Office* of Crandon.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Mary S. Gerbig* of *Grzeca & Stanton, S.C.* of Green Bay.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J. Jane Drangstviet, representative of the estate of Dale Moffet (hereinafter the estate), appeals a summary judgment in favor of Auto-Owners Insurance Company. The estate contends that Moffet's estate falls within the language "owned and occupied by the insured property as a dwelling" under the valued policy statute, § 632.05(2), STATS. Because we conclude that the estate did not occupy the insured property as a dwelling, the statute is inapplicable. Thus, we affirm the trial court.

## BACKGROUND

The facts are undisputed. Doctor Dale Moffet owned property consisting of a house, a clinic and surrounding real estate near Crandon. Moffet purchased a homeowner's insurance policy through Auto-Owners, containing a provision that gave Auto-Owners the option, in the event of loss or damage to a covered structure, to pay the value of the property, pay the cost of repairing or rebuilding the property, or replace or take all or any part of the property at an agreed upon or appraised value. Moffet's clinic was insured through a separate carrier.

In July 1990, Moffet died. His estate renewed the Auto-Owners fire insurance policy two times through December 1992. Although Moffet was deceased, the

estate named him as the insured on the renewed policy. In July 1991, the estate rented the house to tenants. In September 1992, more than two years after Moffet's death, fire damaged the house. The cost of repair exceeded the original value of the house.

At the time of the fire, the policy limits on the house were $121,500. Prior to the fire, the house was assessed at a fair market value of $30,900 and $44,000, according to various assessments. Eventually, Auto-Owners paid the estate $65,492.20 for the loss, which included repairs, loss of rents and loss of personal property, less the $100 deductible.

Subsequently, the estate brought an action to collect the insurance policy limits of $121,500 on the grounds that pursuant to the valued policy statute, § 632.05(2), STATS., the exclusive measure of damages is the policy limits because the house was wholly destroyed by fire. Auto-Owners responded to the summary judgment motion by filing its own summary judgment motion asking the trial court to find that § 632.05(2) does not apply because the house was not occupied by the insured as a dwelling and because the house was not destroyed. In a memorandum decision, the trial court reformed the policy to reflect the estate as the insured. Then, the court found that § 632.05(2) did not apply because the estate did not "occupy" the property as a "dwelling" under § 632.05(2). The estate appeals.

## DISCUSSION

■

When reviewing a grant of summary judgment, appellate courts independently apply the same methodology as the trial court. *Kloes v. Eau Claire Cavalier Baseball Ass'n*, 170 Wis. 2d 77, 83, 487 N.W.2d 77, 79-

80 (Ct. App. 1992). That methodology has been set forth numerous times, and we need not repeat it here. *See Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987). Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.*

The issue presented in this appeal concerns the construction of § 632.05(2), STATS., a question of statutory construction, which we review as a question of law independently of the trial court. *State v. Pham,* 137 Wis. 2d 31, 33-34, 403 N.W.2d 35, 36 (1987). The purpose of the rules of statutory construction is to give effect to the legislative intent. *Id.* at 34, 403 N.W.2d at 36. When determining legislative intent, this court first examines the language of the statute itself and will resort to extrinsic aids only if the language is ambiguous. *Id.; In re P.A.K.,* 119 Wis. 2d 871, 878, 350 N.W.2d 677, 681-82 (1984). A statute is ambiguous if reasonable persons could disagree as to its meaning, and whether a statute is ambiguous is a question of law. *P.A.K.,* 119 Wis. 2d at 878-79, 350 N.W.2d at 681-82; *In re D.S.,* 142 Wis. 2d 129, 134, 416 N.W.2d 292, 294 (1987).

The estate contends that Auto-Owners owes the policy limits of $121,500, per § 632.05(2), STATS., because Moffet's estate, as the insured, "occupied" the destroyed property as a "dwelling." We disagree.

The current valued policy statute, § 632.05(2), STATS., was enacted at Laws of 1979, ch. 73, § 2, and reads:

> Whenever any policy insures real property which is *owned and occupied by the insured as a dwelling*

598

and the property is wholly destroyed, without criminal fault on the part of the insured or the insured's assigns, the amount of the loss shall be taken conclusively to be the policy limits of the policy insuring the property. (Emphasis added.)

The estate relies on *Kohnen v. Wisconsin Mut. Ins. Co.,* 111 Wis. 2d 584, 331 N.W.2d 598 (Ct. App. 1983), for the proposition that the word "occupied" in § 632.05(2), STATS., is ambiguous. In *Kohnen,* the court concluded that the term "occupied" was ambiguous in the context of whether an insured, who periodically leases a dwelling, falls within the statute. *Id.* at 586, 331 N.W.2d at 599. The court concluded that an insured's past rental of property did not preclude recovery under § 632.05. *Id.*

The facts in *Kohnen* and their application to § 632.05, STATS., are distinguishable from this case. Here, the issue involves whether an estate can occupy a dwelling. A word is not ambiguous merely because it is general enough to encompass more than one set of circumstances. *See Wilke v. First Federal S&L Ass'n,* 108 Wis. 2d 650, 654, 323 N.W.2d 179, 181 (Ct. App. 1982). Also, in analyzing the meaning of the term "occupied" in § 632.05(2), we must not focus on the word "occupied" alone, but read it within the context of the entire statute. *See White Hen Pantry v. Buttke,* 98 Wis. 2d 119, 122, 295 N.W.2d 763, 764 (Ct. App. 1980), *rev'd on other grounds,* 100 Wis. 2d 169, 301 N.W.2d 216 (1981). Thus, we conclude the *Kohnen* court's determination that "occupied" is ambiguous is not dispositive in this case.

We conclude that § 632.05(2), STATS., read as a whole, is clear and unambiguous. Thus, we must deter-

mine the legislative intent by giving the words "occupied" and "dwelling" their ordinary meaning. We examine the language of the statute itself to discern whether the estate had "occupied" the property as a "dwelling."

Because neither "occupied" nor "dwelling" are technical terms, we may ascertain their meanings by reference to recognized dictionaries. *See State v. Mattes*, 175 Wis. 2d 572, 578, 499 N.W.2d 711, 713 (Ct. App. 1993). WEBSTER'S THIRD NEW INT'L DICTIONARY 1561 (Unabr. 1976) defines occupy[1] as "to take up residence in . . . to reside in as an owner or tenant." WEBSTER'S defines "dwelling" as "a building or construction used for residence." *Id.* at 706. BLACK'S LAW DICTIONARY 1079 (6th ed. 1990) defines "occupy" as: "To take or enter upon possession of; to hold possession of; to hold or keep for use; to possess; to tenant; to do business in; to take or hold possession. Actual use, possession, and cultivation." BLACK'S defines "dwelling" as: "The house or other structure in which a person or persons live; a residence; abode; habitation; the apartment or building, or group of buildings, occupied by a family as a place of residence. Structure used as place of habitation." *Id.* at 505.

Read as a whole, it is clear that the statute applies to insureds, who are persons living in or actually using a residence or place of habitation. The estate is not a person or living presence that actually lived in the residence. The estate, as an inanimate entity, simply could not occupy a residence under the ordinary meanings of the terms of § 632.05(2), STATS.

---

[1] We analyze the present tense "occupy" instead of the past tense "occupied" as used in § 632.05, STATS.

██

The estate argues that it possessed the dwelling by virtue of its ownership and thus "occupied" the dwelling. First, as the statute indicates, the occupation of the dwelling is predicated on it being *owned* by the insured. Thus, ownership alone does not signify occupation. Second, the definition of "possess" indicates that possession entails occupation in person. Specifically, BLACK'S, *supra,* at 1162, defines "possess" as: "To occupy in person; to have in one's actual and physical control; to have the exclusive detention and control of; to have and hold as property; to have a just right to; to be master of; to own or be entitled to." Although the term "possess" is defined by occupation, it is occupation *in person*. Here, the estate did not occupy the dwelling in person, as it is an entity, not a living being.

██

Because we conclude that the value policy statute is clear on its face, we need not look at extrinsic evidence to ascertain the legislature's intent.[2] *See P.A.K.,* 119 Wis. 2d at 878, 350 N.W.2d at 681. We conclude that the estate does not fall under § 632.05(2), STATS.; therefore, it cannot recover the homeowner's policy limits. Due to the estate's inability to recover under the statute, we need not address the other issues presented by the estate on appeal.

*By the Court.*—Judgment affirmed.

---

[2] Even if we were to conclude that the term "occupied" is ambiguous in the context of whether an estate can "occupy" a dwelling, the legislative history of § 632.05(2), STATS., supports our conclusion. *See generally* STATE OF WISCONSIN LEGISLATIVE DRAFTING RECORD—LAWS OF 1979: *Senate Substitute Amendment 1 to 1977 Assembly Bill 691.*