Todd CAMBIER,
Plaintiff-Respondent,†

v.

INTEGRITY MUTUAL INSURANCE COMPANY,
Defendant-Appellant.

Court of Appeals

*No. 2006AP3112. Submitted on briefs June 13, 2007.
—Decided July 26, 2007.*

2007 WI App 200

(Also reported in 738 N.W.2d 181.)

† Petition to review denied 10/10/07.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Patrick W. Brennan* and *Sarah Fry Bruch* of *Crivello, Carlson & Mentkowski*, S.C., Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Michael J. Brose* and *Anne E. Schmiege* of *Soar, Drill & Skow*, S.C., New Richmond.

Before Dykman, Vergeront and Bridge, JJ.

¶ 1. VERGERONT, J. The dispositive issue on this appeal is whether, under WIS. STAT. § 632.05(2) (2005–06),[1] the insured occupied "primarily as a dwelling" a cabin that he owned that was damaged by fire. The circuit court concluded that the undisputed facts showed that the insured, Todd Cambier, did meet this requirement and was entitled to the policy limits as provided in the statute. The insurer, Integrity Mutual Insurance Company, appeals the summary judgment entered against it.

---

[1] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

¶ 2. We conclude that the insured did not occupy the cabin primarily as a dwelling because, based on the undisputed facts, at the time of the fire Cambier was using the cabin primarily as a rental property. Accordingly, the terms of the insurance policy, not the terms of the statute, determine the amount of Integrity's obligation. We therefore reverse and remand for further proceedings consistent with this opinion.

## BACKGROUND[2]

¶ 3. Cambier owns a cabin in Hayward, Wisconsin, which he purchased in 1995. He lived there until 2000, when he married and moved to Illinois. He and his family spent the majority of the summer at the cabin in 2000, 2001, and 2002, and other times in those years when his wife had breaks from her job teaching school.

¶ 4. From late 2002 until February 2005, Cambier rented the cabin to four different tenants on a month-to-month basis for these time periods: late 2002 to April 2003; July 2003 to October 2003; December 2003 to February 2004; and June or July 2004 to February 2005. He charged each of the tenants rent, although the fourth tenancy began with an agreement that the tenant would do improvements instead of paying rent; Cambier started charging rent to this tenant because he was not accomplishing much. The evidence regarding Cambier's stays at the cabin after he began renting it to others will be discussed later in the opinion.

¶ 5. Cambier evicted the fourth tenant in late February or early March 2005. The last checks from this tenant had bounced, he did not return phone calls,

---

[2] The facts in paragraphs 3 through 5 are from Cambier's deposition.

and a friend who lived near the cabin reported to Cambier that it looked like no one was living there. After the eviction proceeding, at which the tenant did not appear, Cambier drove to Hayward to see for himself what the situation was. His plan was to stay at the cabin if the tenant was gone and with friends if the tenant was still there, and to remain as long as it took to take care of things; he had taken time off work and hoped to be away at most a week. Cambier arrived in the early morning of March 18, 2005. The tenant was not there and had left personal belongings behind. Cambier began cleaning up, then left to see a friend. While he was away from the cabin, a fire broke out.

¶ 6. On the date of the fire, Cambier had a homeowner's policy with Integrity for the cabin; the policy limit for the dwelling was $85,800. The appraisal report determined that the cabin could be repaired and estimated the repair cost at $54,410.53 and the full replacement cost of the cabin at $68,013.16. Under the terms of the policy, Integrity's obligation to Cambier for the cabin was the smaller of the liability limits, the replacement costs, and the amount actually spent for necessary repair or replacement.

¶ 7. A dispute arose between Integrity and Cambier over whether the terms of the policy or the terms of Wis. Stat. § 632.05(2) should control the amount of Integrity's obligation. Section 632.05(2), sometimes called the "valued policy law," provides:

> **(2)** Total loss. Whenever any policy insures real property that is owned and occupied by the insured primarily as a dwelling and the property is wholly destroyed, without criminal fault on the part of the insured or the insured's assigns, the amount of the loss shall be taken conclusively to be the policy limits of the policy insuring the property.

The significance of the valued policy law is that under it the insurer must pay the policy limits, not the actual amount of the loss. *Seider v. O'Connell*, 2000 WI 76, ¶ 29, 236 Wis. 2d 211, 612 N.W.2d 659. This is so even if the terms of the insurance policy provide otherwise. *Id.*, ¶ 56.

¶ 8. Cambier's position is that the statute applies and he is entitled to the policy limits. Integrity's position is that the policy, not the statute, controls because the cabin was not "occupied [by Cambier] primarily as a dwelling" and because the cabin was not "wholly destroyed."

¶ 9. Cambier filed this action to resolve the dispute and both parties moved for summary judgment. The circuit court agreed with Cambier and entered summary judgment in his favor. The judgment ordered Integrity to pay Cambier the difference between the $54,410.35 it had already paid him and the policy limits.

## DISCUSSION

¶ 10. Integrity argues on appeal that the circuit court erred in concluding that WIS. STAT. § 632.05(2) applies. As in the circuit court, Integrity contends that the undisputed facts show that the cabin was not "occupied [by Cambier] primarily as a dwelling" at the time of the fire and that the cabin was not "wholly destroyed." Because we agree with Integrity on the first point, we do not address the second.

■

¶ 11. When we review a circuit court's grant or denial of summary judgment, we use the same methodology as the circuit court and our review is de novo. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 314–15, 401 N.W.2d 816 (1987). Summary judgment is

proper when there are no genuine issues of material fact and one party is entitled to judgment as a matter of law. Wis. Stat. § 802.08(2).

¶ 12. The dispositive issue on this appeal involves the construction of Wis. Stat. § 632.05(2) and its application to a given set of facts. This presents a question of law subject to de novo review. *See Drangstviet v. Auto-Owners Ins. Co.*, 195 Wis. 2d 592, 598, 536 N.W.2d 189 (Ct. App. 1995).

¶ 13. When we construe a statute, we begin with the language of the statute and give it its common, ordinary, and accepted meaning, except that technical or specially defined words are given their technical or special definitions. *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. We interpret statutory language in the context in which it is used and in a reasonable way so as to avoid absurd or unreasonable results. *Id.*, ¶ 46. If, employing this approach, we conclude the statutory language has a plain meaning, then we apply the statute according to its plain meaning. *See id.*, ¶ 45.

¶ 14. The statutory language at issue on this appeal is "occupied by the insured primarily as a dwelling." Integrity's position is that Cambier did not "occupy" the cabin "primarily as a dwelling" at the time of the fire because he lived in Illinois and, according to Integrity, his primary use of the cabin since late 2002 had been renting it to others. Cambier responds that, although he did rent the cabin to others, he was still occupying it "primarily as a dwelling" because he stayed there at times and it was a "seasonal" dwelling. According to Cambier, Wis. Admin. Code § INS 4.01(2)(a) (Aug. 2000), as limited by *Kohnen v. Wisconsin Mut. Ins.*

344

*Co.*, 111 Wis. 2d 584, 331 N.W.2d 598 (Ct. App. 1983), supports his position that "seasonal dwellings" are covered under the statute even if they are rented out at times. Integrity replies that the facts in *Kohnen* are significantly different from those in this case.

¶ 15. Examining first the statutory language, we see that, although the insured must "occupy" the real property "primarily as a dwelling," nothing in the language of the statute suggests that an insured may occupy only *one* real property "primarily as a dwelling." "Primarily" refers to the uses of one property when there is more than one use: occupancy as a dwelling must be the primary use and may not be secondary to another use. The statute does not say that it applies only to an insured's "primary dwelling." *Seider*, 236 Wis. 2d 211, ¶ 38, supports this reading of the statute.

¶ 16. In *Seider*, decided before the legislature added the word "primarily," the court held that the statutory language plainly did "not exclude any dwellings that are 'owned and occupied by the insured.'" *Id.* The court gave "dwelling" its common meaning—"a building or construction used for residence"—and held that the statute plainly included a building that the insureds used both as a residence and for their business, a restaurant. *Id.*, ¶¶ 35, 41. Presumably in response to *Seider*, the legislature added "primarily" in order to express its policy judgment that combined-use buildings whose primary use is not as a dwelling should be excluded.[3] This is now an exclusion, and the only

---

[3] "Primarily" was added by 2001 Wis. Act 65, § 21 (effective April 24, 2002). In *Seider v. O'Connell*, 2000 WI 76, ¶ 6, 236 Wis. 2d 211, 612 N.W.2d 659, the court held WIS. ADMIN. CODE § INS 4.01(2)(e) (June 1999) was invalid because it contradicted

exclusion, to *Seider's* construction of "any dwellings that are 'owned and occupied by the insured.' " *See id.*, ¶ 38.

¶ 17. Based on the plain language of the statute, we conclude that it does not exclude real property that is owned by the insured and occupied by the insured primarily as a dwelling solely because it is not the insured's primary residence.[4] Therefore, to the extent Integrity argues that Cambier did not "occupy" the cabin "primarily as a dwelling" solely because his primary residence was his house in Illinois, we conclude that is based on an incorrect construction of the statute.

---

the plain language of the statute. *Id.*, ¶ 6. The rule provided that the statute did not cover real property "any part of which is used for commercial (non-dwelling) purposes other than on an incidental basis . . . ." *Id.*, ¶ 20 (citation omitted).

[4] Because the statutory language is plain on this point, we do not consider legislative history in construing the language. *See State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶¶ 47, 50, 271 Wis. 2d 633, 681 N.W.2d 110 (if we conclude statutory language is ambiguous—that is, capable of being understood by reasonably well-informed persons in two or more senses—then we may consult extrinsic sources, such as legislative history). In *Seider*, although the court concluded that "dwelling" was unambiguous as applied to the facts of that case, it opted to consider legislative history. 236 Wis. 2d 211, ¶¶ 48–52. The valued policy law was re-enacted by 1979 Wis. Laws, ch. 73, § 2 and at this time the phrase "owned and occupied by the insured as a dwelling" was added. *Id.*, ¶ 33. Among the extrinsic sources noted by the court were these post-enactment comments of an advisory council to the Office of the Insurance Commissioner: "Because the 'legislative history is not clear, but seasonal dwellings were included in prior laws,' the subcommittee agreed that the statute should apply to such properties; after all, 'the statute doesn't say "principal dwelling." ' " *Id.*, ¶ 65 (citation omitted).

However, we emphasize that, even though a residence owned by the insured is not excluded solely because it is not the insured's primary residence, in order to be covered under the statute it must be "occupied by the insured primarily as a dwelling."

¶ 18. *Kohnen*, 111 Wis. 2d 584, is the only case that has addressed application of the statute to what might be considered a "second home."[5] There the insured had rented his cottage to someone else for about two months and the rental ended about three months before the fire; the insured had "personally used the cottage up to the day of the fire." *Id.* at 586. We rejected the insurer's argument that the statute did not apply because of Wis. Admin. Code § INS 4.01(2)(a),[6] which provides: "A dwelling used seasonally shall be considered as owned and occupied by the insured if it is not rented to a non-owner for any period of time." We stated:

> Although we do not know exactly what the insurance commissioner meant by ["for any period of time"], we reject as unreasonable any construction of sec. 632.05(2) that denies benefits solely on the basis of a past rental.

---

[5] We note that *Kohnen v. Wisconsin Mut. Ins. Co.*, 111 Wis. 2d 584, 331 N.W.2d 598 (Ct. App. 1983), and the other cases we discuss were decided before the amendment added "primarily," the statute then provided that the property had to be "occupied by the insured as a dwelling." *See, e.g.*, Wis. Stat. § 632.05(2) (1981–82). Because we examine the cases for their discussions of "occupied" and "dwelling," they are relevant despite the subsequent amendment.

[6] The commissioner of insurance is charged with administering and enforcing the insurance laws, Wis. Stat. § 601.41(1), and has the authority to adopt rules to implement those statutes. Section 601.41(3); Wis. Stat. § 227.11(2)(a).

> We can think of no good reason to deprive an insured of the benefits of sec. 632.05(2) merely because the insured rented the insured property in the past. . . . A past rental of property does not affect an insured's present occupancy of the property.

*Kohnen* at 585–86 (citation omitted). After noting that the rental had ended three months before the fire and the insured had "personally used the cottage up to the day of the fire," we concluded that "[t]he rental therefore did not interfere with [the insured's] occupancy of the cottage at the time of the fire."[7] *Id.* at 586.

¶ 19. Cambier argues that *Kohnen* supports his position because it holds that "seasonal dwellings" are covered regardless of past rentals, but that is an overly

---

[7] We observe that in *Kohnen,* 111 Wis. 2d at 586, we stated that "[t]he ambiguous term in sec. 632.05(2) is 'occupied,' " but said no more about ambiguity. However, our comment that it was unreasonable to construe WIS. STAT. § 632.05(2) not to apply solely on the basis of a past rental suggests that we viewed the statute as unambiguous on the facts of that case. Wisconsin applies a contextual approach when analyzing statutes, meaning different fact sets can make what was ambiguous as applied to one situation unambiguous as applied to another. *See Seider,* 236 Wis. 2d 211, ¶¶ 43–44. Applying this doctrine, we have subsequently concluded that "occupied" is unambiguous as applied to certain factual situations. *See, e.g., Drangstviet v. Auto-Owners Ins. Co.,* 195 Wis. 2d 592, 599–601, 536 N.W.2d 189 (Ct. App. 1995) ("occupied" is unambiguous in the context of the whether the statute apples to the estate of an insured decedent); *Seider,* 236 Wis. 2d 211, ¶ 47 ("occupied by the insured as a dwelling" is unambiguous in the context of an insured whose only residence was a building that also contained a restaurant). In this case, we have resolved the statutory construction issue presented by these facts by giving the language its common meaning and taking into account existing case law. *Seider,* 236 Wis. 2d 211, ¶¶ 41–47.·

broad reading of the case. It was central to our holding in *Kohnen* that the insured was personally using the cottage at the time of the fire and had been doing so for three months. We concluded this constituted "occupancy" and held that a past rental did not affect that "present occupancy." *Id.* We did not hold that past rental of the property is in all cases irrelevant to the question of whether an insured is presently "occupying" real property "as a dwelling."

¶ 20. In contrast to the facts in *Kohnen*, in this case the fourth rental had recently terminated and Cambier had come to the cabin to investigate the tenant's whereabouts and "to take care of things," planning to stay no more than a week. *Kohnen* does not support the proposition that Cambier's brief stay for that purpose constitutes "occupancy" of the cabin either "as a dwelling " or "primarily as a dwelling." And, because we concluded there was "occupancy" in *Kohnen* without articulating a definition, we do not have a definition of "occupancy" from *Kohnen* that we can apply to the different facts in this case. The administrative rule provides no guidance on these facts, either. The Office of Insurance Commissioner has not modified the rule since our decision in *Kohnen* and thus we do not know how, in light of *Kohnen*, it views the relationship of rentals to "occupancy" of "seasonal dwellings."

¶ 21. We did apply a definition of "occupy" in *Drangstviet*, although in a different factual context. The issue in *Drangstviet*, 195 Wis. 2d at 601, was whether the estate of the deceased "occupied" the real property as a "dwelling," and we concluded it did not. After consulting dictionaries for the common meanings of "occupy" and "dwelling," we stated that, "[r]ead as a whole, it is clear that the statute applies to insureds,

349

who are persons living in or actually using a residence or place of habitation."[8] *Id.* at 600.

■

¶ 22. We conclude that the concept of "use" is the core meaning of "occupy" in the context of this statute. Combining this with the common meaning of dwelling, *see id.*; *Seider*, 236 Wis. 2d 211, ¶ 35, the statute means that the building must be used by the insured primarily as a residence. We do not include the modifier "actually" before "use," as we did in *Drangstviet*, 195 Wis. 2d at 600–01. That modifier was important in *Drangstviet* because the insured was a legal entity, not a natural person, and "actually" emphasized a rejection of the theoretical or non-physical use that the estate was advocating. In other contexts, "*actual* use" might imply that the insured has to be physically present in a way that would inappropriately narrow the meaning of "occupy."

¶ 23. Plainly, an insured is not using a building primarily as a residence while someone else is renting it for a residence. The fundamental notion of a tenancy is

---

[8] The dictionaries we consulted in *Drangstviet*, 195 Wis. 2d at 600, for the common meaning of "occupy" gave these definitions: "to take up residence in . . . to reside in as an owner or tenant,"(citing WEBSTER'S THIRD NEW INT'L DICTIONARY 1561 (1993)); "[t]o take or enter upon possession of; to hold possession of; to hold or keep for use; to possess; to tenant; to do business in; to take or hold possession[; a]ctual use, possession, and cultivation," (citing BLACK'S LAW DICTIONARY 1079 (6th ed. 1990)). The dictionaries we consulted on the common meaning of "dwelling" gave these definitions: "a building or construction used for residence," (citing WEBSTER'S at 706); "[t]he house or other structure in which a person or persons live; a residence; abode; habitation; the apartment or building, or group of buildings, occupied by a family as a place of residence[; s]tructure used as place of habitation." *Id.* (citing BLACK'S at 505).

that the tenant has the right to occupy the premises, not the owner or landlord. *See* Wis. Stat. § 704.05(2) (with very limited exceptions the tenant has the right to exclusive possession of the premises). We do not understand Cambier to dispute this proposition. His argument is that he did not continuously rent the cabin and he personally used it when it was not rented. We return at this point to an analysis of the evidence.

¶ 24. We begin in January 2004, because that provides a substantial period of time preceding the fire—fourteen and one-half months—in which to examine his use of the cabin. The cabin was rented during January to sometime in February 2004, and from June or July 2004 to sometime in February 2005. Thus, (using July rather than June as more favorable to Cambier) during approximately ten of the preceding fourteen and one-half months, tenants were living in the cabin. Cambier testified that during 2004 he stayed at the cabin three times: in February or March, after the third tenant had left, when he and his father stayed three days to check up on it and make sure everything was in working condition; another time after that for two days; and another time for about four days, when he met the fourth tenant, who began to live there in June or July. Cambier and his family went to Hayward in July 2004 for three days, but they did not stay at the cabin; and in October 2004 when he went to check on the tenant and visit friends, he stayed with friends. Thus, the evidence is that Cambier stayed at the cabin only nine days in 2004, and at least part of that time the stay was in connection with renting the cabin. The only time Cambier was at the cabin in 2005 before the fire, was on the day of the fire, and the purpose of that stay was in connection with the tenancy that had just terminated.

351

¶ 25. Based on these undisputed facts, we conclude that at the time of the fire the cabin was not being used by Cambier primarily as a residence. He was using it primarily as rental property. The fact that he kept some personal property there is not inconsistent with using the cabin primarily as rental property and does not add anything of significance to his few, short stays there in 2004 and 2005.[9]

¶ 26. We also do not view it as significant that in earlier years he made more personal use of the cabin. The only reasonable reading of the statute is that it is concerned with the use of the building at the time of the fire. This does not mean that evidence of the use of the building before the day of the fire is irrelevant. Depending on the circumstances, evidence of the use of the building before the day of the fire may be relevant, and we do not attempt to establish a specific time period. However, when the primary use of the building for at least fourteen months before the fire has been renting it to others, evidence of a different primary use before that time is not relevant to a determination of the statute's application.[10]

---

[9] Cambier testified that he kept his own blankets, clothes, utensils, dishes, books, and toiletries at the cabin for use when he was there, and these were there at the time of the fire. Besides the appliances, he had some furniture there—a bed and desk.

[10] Cambier's testimony on the use during 2003 is not clear. He did not testify to specific stays at the cabin in 2003, but testified that "between 2000 and 2004" he and his wife went "there [to the Hayward property or to Hayward] 12 to 15 times a year." However, the cabin was rented to others from late 2002 to April 2003, July 2003 to October 2003, and December 2003 to

¶ 27. Finally, we reject Cambier's argument that the reason he rented it to others is irrelevant. He testified that the cabin had been broken into and the insurance adjuster suggested that it was good to have someone staying there to keep burglars away. He also described the tenants as people who needed a place to stay for a period of time. The reasons he rented the cabin do not bear on the nature of his use of the cabin, which is the statute's concern.

## CONCLUSION

¶ 28. Based on the undisputed facts, we conclude that Cambier did not occupy the cabin primarily as a dwelling because at the time of the fire he was using it primarily as a rental property.[11] Accordingly, the terms of the insurance policy, not the terms of the statute, determine the amount of Integrity's obligation. We therefore reverse and remand for further proceedings consistent with this opinion.

*By the Court.*—Judgment reversed and cause remanded.

February 2004. For purposes of this decision, we assume he did stay at the cabin twelve to fifteen times in 2003.

[11] Because of this conclusion, we need not address Integrity's argument that the cabin was not a "seasonal dwelling" because it was used by Cambier and tenants throughout the year. However, we observe that excluding a building from coverage because it is not a "seasonal" dwelling, if it is owned and occupied by the insured primarily as a dwelling, is inconsistent with *Seider*, 236 Wis. 2d 211, ¶ 38, and with our analysis of the statutory language in paragraphs 15–17 above.