Dale DAWSON, Gudrun Dawson
and Edward Thomas, Plaintiffs-Respondents,

v.

TOWN OF JACKSON, Defendant-Respondent,

TOWN OF CEDARBURG, Defendant-Appellant.†

Court of Appeals

*No. 2009AP120. Oral argument November 17, 2009.
—Decided January 6, 2010.*

2010 WI App 24

(Also reported in 780 N.W.2d 222.)

† Petition to Review granted 5/13/10.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Brad M. Hoeft* of *Huiras, Farrell & Antoine, S.C.,* Port Washington.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Daniel L. Sargeant* of *Schloemer Law Firm, S.C.*, West Bend.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *John M. Bruce* of *Schober Schober & Mitchell, S.C.*, New Berlin.

Before Brown, C.J., Anderson and Snyder, JJ.

¶ 1. SNYDER, J. The Town of Cedarburg appeals from a declaratory judgment in favor of Dale and Gudrun Dawson and Edward Thomas (the Dawsons). The Dawsons sought to discontinue a portion of a town highway shared by Cedarburg and the Town of Jackson. Jackson approved, Cedarburg did not. Cedarburg contends that the Dawsons should have sought certiorari review under WIS. STAT. § 82.15 (2007–08)[1] rather than bringing an action for declaratory judgment. It also contends that the circuit court incorrectly interpreted the way town board member votes should be counted when boards act under WIS. STAT. § 82.21, which sets forth the procedure to lay out, alter, or discontinue a town highway that is situated on the line between one town and another. Cedarburg further asserts that the Dawsons' current position on how votes should be counted is inconsistent with their prior actions; therefore, equitable estoppel bars their claim. We disagree with Cedarburg and we affirm the declaratory judgment.

## BACKGROUND

¶ 2. The Dawsons applied to both towns, Cedarburg and Jackson, seeking to vacate a portion of the

---

[1] All references to the Wisconsin Statutes are to the 2007–08 version.

town highway known as Wausaukee Road. Wausaukee Road lies on and across the municipal boundary lines of Cedarburg and Jackson, and the Dawsons own the property bordering the road. By letter dated August 30, 2007, the Dawsons requested a joint meeting of the town boards to consider their application.

¶ 3. The joint meeting took place on January 9, 2008. The town board for each municipality consists of five members. All five Jackson board members attended the meeting, but only three members of Cedarburg's board were present. During the public hearing portion of the meeting, several residents spoke. Four spoke in opposition to the application, three spoke in favor of it, and one letter in favor of the application was read into the record. The public portion of the hearing closed and the town board members proceeded to discuss the application and take a vote. Each town, on its own motion, voted separately. Jackson voted five-to-zero to vacate a portion of Wausaukee Road per the application and Cedarburg voted three-to-zero not to vacate. On January 14, Jackson recorded a highway order with the Washington County Register of Deeds to vacate that portion of Wausaukee Road. The Town of Cedarburg did not acknowledge that highway order.

¶ 4. On June 20, 2008, the Dawsons commenced a declaratory action seeking a determination that the portion of Wausaukee Road in question had been discontinued. The Dawsons then moved for summary judgment and Jackson supported the Dawsons' motion. Cedarburg argued that the Dawsons should have sought certiorari review under WIS. STAT. § 82.15. It further argued that the votes of both town boards at the January 9, 2008 joint hearing should not have been counted as a whole, with five in favor and three against; rather, the result was unanimous support from Jackson

but unanimous rejection by Cedarburg and the application should have been denied. Cedarburg argued that because the Dawsons had originally approached Jackson separately for approval, their current position that the votes should be counted together was inconsistent. The circuit court determined that declaratory relief was an appropriate vehicle for the Dawsons to pursue relief and held that, under Wis. Stat. § 82.21(2), the votes at the joint hearing were properly counted in the aggregate. The circuit court did not address estoppel, presumably because the claim was not clearly presented or argued before the court.[2] The court granted the Dawsons' motion for summary judgment and Cedarburg appeals.

## DISCUSSION

¶ 5. Cedarburg renews the same three issues on appeal. First, it argues that the Dawsons should be precluded from seeking relief in the form of a declaratory judgment because certiorari review was prescribed by statute. Next, Cedarburg argues that the Dawsons should be estopped from asserting any position inconsistent with representations to the town boards prior to the joint hearing. Third, Cedarburg contends that the circuit court erred when it held that Wis. Stat. § 82.21(2) required the separate town board votes to be counted together.

¶ 6. These issues were resolved by summary judgment in the circuit court. Summary judgment is appro-

---

[2] The nearest thing to an estoppel argument in Cedarburg's brief on summary judgment is a section titled "Plaintiffs' Prior Actions Are Inconsistent With Their Current Argument." Nowhere in this section is the word "estoppel" used, nor is any case law on the issue employed.

priate when no genuine issue of material fact exists and only questions of law remain. Wis. Stat. § 802.08(2). On appeal, we review a grant of summary judgment using a well-known methodology that need not be repeated here. *See, e.g., Lambrecht v. Estate of Kaczmarczyk*, 2001 WI 25, ¶¶ 20–24, 241 Wis. 2d 804, 623 N.W.2d 751. Our review of a summary judgment is de novo. *Foremost Farms USA Co-op. v. Performance Process, Inc.*, 2006 WI App 246, ¶ 10, 297 Wis. 2d 724, 726 N.W.2d 289.

### *Certiorari Review vs. Declaratory Judgment*

¶ 7. We begin with Cedarburg's assertion that this action should have been brought under Wis. Stat. § 82.15, which states that "[a]ny person aggrieved by a highway order, or a refusal to issue such an order, may seek judicial review under [Wis. Stat.] s. 68.13."[3] The Dawsons' failure to pursue certiorari review should, Cedarburg contends, "preclude this declaratory judgment action."

██

¶ 8. Certiorari review limits the issues to: (1) whether the board kept within its jurisdiction, (2) whether it acted according to law, (3) whether it acted arbitrarily or unreasonably, and (4) whether the evidence was such that the board might reasonably make the determination it made. *See Cohn v. Town of Randall*, 2001 WI App 176, ¶ 25, 247 Wis. 2d 118, 633 N.W.2d 674. Cedarburg directs us to *Master Disposal Inc. v. Village of Menomonee Falls*, 60 Wis. 2d 653, 657,

---

[3] Wisconsin Stat. § 68.13 states in relevant part: "Any party to a proceeding resulting in a final determination may seek review thereof by certiorari within 30 days of receipt of the final determination."

211 N.W.2d 477 (1973), for the proposition that a declaratory judgment action is not authorized where a more specific method of review is set forth by statute.

¶ 9. The Dawsons respond that the issue placed before the circuit court was outside the scope of certiorari review. They did not allege that the Cedarburg and Jackson town boards exceeded their jurisdiction, failed to act according to law, acted arbitrarily, or reached a determination unsupported by the evidence. Rather, the Dawsons accept the actions of the Cedarburg and Jackson town boards "as a given" and "accept[] those actions in their entirety." The Dawsons sought a declaration of the legal impact of the boards' votes on the application to discontinue part of Wausaukee Road. Certiorari review would not have reached the issue or offered a remedy.

¶ 10. We agree with the Dawsons that the question here is not one that could have been adequately addressed by certiorari review. WISCONSIN STAT. § 806.04(1), the uniform declaratory judgments act, provides that a court has the "power to declare rights, status, and other legal relations." The purpose of § 806.04 is remedial, intended to "settle and to afford relief from uncertainty and insecurity" and it is to be "liberally construed and administered." Sec. 806.04(12). Here, the Dawsons sought a determination of whether WIS. STAT. § 82.21(2) required the votes of both the Cedarburg board and the Jackson board to be counted together. This question is appropriately raised in a declaratory judgment action.

*Estoppel*

¶ 11. Cedarburg next argues that the Dawsons should be estopped from advocating any interpretation

484

of WIS. STAT. § 82.21(2) that is inconsistent with their prior representations. The Dawsons respond that Cedarburg has waived this argument by failing to fully develop it in the circuit court. While we agree that Cedarburg never clearly pled or argued equitable estoppel, we choose to briefly address the argument. *See Wirth v. Ehly*, 93 Wis. 2d 433, 443–44, 287 N.W.2d 140 (1980) (the waiver rule is not absolute and a court may, in its discretion, choose to address arguments developed for the first time on appeal), *superseded on other grounds by statute as stated in Wilson v. Waukesha County*, 157 Wis. 2d 790, 797, 460 N.W.2d 830 (Ct. App. 1990).

¶ 12. "The elements of equitable estoppel are: (1) action or non-action, (2) on the part of one against whom estoppel is asserted, (3) which induces reasonable reliance thereon by the other, either in action or non-action, and (4) which is to his or her detriment." *Milas v. Labor Ass'n of Wis., Inc.*, 214 Wis. 2d 1, 11–12, 571 N.W.2d 656 (1997). "When the facts and reasonable inferences therefrom are not disputed, it is a question of law whether equitable estoppel has been established." *Id.* at 8.

¶ 13. Cedarburg argues that the Dawsons' prior words and actions induced it to send only three of its five town board members to the joint hearing. Referring to an application to discontinue Wausaukee Road filed two years prior, Cedarburg asserts that the Dawsons "had inappropriately tried to circumvent the statutory requirements under Sec. 82.21(2), Stats., by approaching Jackson's Plan Commission and Town Board to act alone on the application." By attempting this "end-run" of the statute, Cedarburg argues, the Dawsons must be estopped from now asserting that the two town boards act in concert.

¶ 14. Cedarburg also points to language in the Dawsons' August 30, 2007 correspondence to both towns, which advised that "[e]ach Board must come to a determination within 90 days" of receipt of the application and closed by stating that "[t]he final step in the process, assuming approval by both Boards, is for the Town Boards to authorize execution of a 'Highway Order' which is then recorded." Cedarburg argues that the letter confirms the Dawsons' position that the town boards should vote separately and that approval by both boards would be required. Cedarburg further explains that it relied on the Dawsons' representations to its detriment; specifically, that it sent only three of its five town board members "without any concern that its position [on the application] would be potentially prejudiced by having fewer than all of its members present."

¶ 15. Jackson responds that once the procedure to discontinue a town highway is properly initiated, the statute directs the towns to proceed under WIS. STAT. §§ 82.10 to 82.13. *See* WIS. STAT. § 82.21(2). Nothing in the statutes makes any exception if the applicant previously directed an application to just one of the towns. We agree. Even if we were to accept that the Dawsons attempted to discontinue Wausaukee Road without seeking Cedarburg's approval, the statutes clearly provide that where the action prayed for concerns a town highway on and across town lines, the towns must act together on the application. *See* § 82.21(2). Cedarburg could not reasonably believe that the Dawsons were somehow empowered to circumvent the statutory procedure. To the contrary, it is clear from the record that Cedarburg insisted that the Dawsons follow the statu-

tory mandate that the towns act together.[4] Because estoppel requires *reasonable reliance* by the party asserting estoppel, Cedarburg's claim fails. *See Milas*, 214 Wis. 2d at 12.

*Interpretation of "Acting Together"*
*in* Wis. Stat. *§ 82.21(2)*

¶ 16. Cedarburg next argues that the circuit court incorrectly interpreted the term "acting together" in Wis. Stat. § 82.21(2). At the joint hearing, the five Jackson board members voted unanimously in favor of discontinuing Wausaukee Road; the three Cedarburg board members voted unanimously against discontinuing the road. The Dawsons assert that on the five-to-three vote, the application to discontinue was approved. Cedarburg asserts that the vote was one town in favor and one town against; thus, the application was not approved. As the circuit court observed, "Counting is the controversy."

¶ 17. When we construe a statute, we begin with the language of the statute and attribute to it the common, ordinary, and accepted meaning. *Cambier v. Integrity Mut. Ins. Co.*, 2007 WI App 200, ¶ 13, 305 Wis. 2d 337, 738 N.W.2d 181. We interpret the language in the context in which it is used and in a way that avoids absurd or unreasonable results. *Id.* If, using this approach, the statute has a plain meaning, we apply that meaning to the facts. *Id.* The relevant statutory language is as follows:

---

[4] The Dawsons acknowledge this in the letter dated August 30, 2007, which stated in relevant part: "Although the Jackson Board recently voted to confirm its earlier action, the Cedarburg Board has requested that the Jackson Town Board attend a joint meeting."

**(1)** INITIATING THE PROCEDURE. The procedure to lay out, alter, or discontinue a highway on the line between a town and another town, a city, or a village, or a highway extending from one town into an adjoining town, city, or village, shall begin only when one of the following occurs in each affected municipality:

. . . .

**(2)** CONTENTS OF THE APPLICATION OR RESOLUTION. An application or resolution under sub. (1) shall contain a legal description of the highway to be discontinued or of the proposed highway to be laid out or altered and a scale map of the land that would be affected by the application. Upon completion of the requirements of sub. (1), the governing bodies of the municipalities, *acting together,* shall proceed under ss. 82.10 to 82.13.

WIS. STAT. § 82.21 (emphasis added).

¶ 18. Although we owe no deference to the circuit court on questions of statutory interpretation,[5] we benefit from the court's rationale, which stated in relevant part:

Where there is a separate vote then one town board can veto. Where there is a joint vote then the majority of the supervisors of the two towns acting as one would decide the issue. If the legislature had meant to authorize an individual town to block an attempt to lay out, alter or discontinue a highway on a town line they could have done so simply by requiring approval by both towns. A particular procedure would not have been necessary. Separate approval is the opposite of "acting together."

---

[5] When the issue requires the application of a statute to undisputed facts, we proceed with our review de novo. *State ex rel. McElvaney v. Schwarz,* 2008 WI App 102, ¶ 8, 313 Wis. 2d 125, 756 N.W.2d 441, *review denied,* 2008 WI 122, 314 Wis. 2d 70, 758 N.W.2d 91 (WI Aug. 18, 2008) (No. 2007AP415).

. . . .

The Town of Cedarburg's reading would lead to an absurd and unreasonable result. Although it is not entirely unreasonable to allow one party to block joint action, the legislature chose not to do that. This is perhaps because allowing a single town to block a joint initiative without any administrative procedure to harmonize such a decision is entirely inconsistent with the other highway laws which deal with on the border and cross border highway construction, maintenance and enforcement. The Town of Cedarburg's reading is not only inconsistent with the plain reading of the statute but is directly contrary to the public policy expressed in Chapter 82 and elsewhere in the statute.

■

¶ 19. We agree with the circuit court that the correct procedure when towns act together under WIS. STAT. § 82.21(2) is to count all of the votes of all town board members present and, from all votes cast, determine whether an application is approved or denied. We hold this to be the proper interpretation for two reasons.[6]

---

[6] The Wisconsin Towns Association filed an amicus curiae brief supporting Cedarburg's interpretation of the statute. It criticizes the Dawsons' and the circuit court's interpretation of "acting together" as one that "endorses unilateralism in a cooperative enterprise." The Wisconsin Towns Association raises the specter of chaos if the circuit court's interpretation is affirmed:

Municipalities will increase their board member sizes, not for concerns of best representing their local constituents, but instead for the sole purpose of jointly-owned public highway wars. Municipalities will be driven so as to purposefully schedule meetings when it will be difficult for full memberships of governing bodies to appear.

We do not envision such a total breakdown of order and cooperation, nor do we accept the proposition that every board

¶ 20. First, the statutory context in which the language appears makes clear that towns act in concert at other points in the Wis. Stat. § 82.21 procedural process. Cedarburg acknowledges in its brief that once an application to modify a shared town highway is submitted, the statute requires the towns, "acting together, [to] proceed under ss. 82.10 to 82.13." *See* § 82.21(2). Under Wis. Stat. § 82.11(1), the towns must act together to provide notice of a time and place where public comment will be received and the supervisors, here the town board members, from each town must "personally examine the highway" before making a decision on the application. Under Wis. Stat. § 82.12(1), the towns must act together to "make a determination" on the application within ninety days. The theme of acting together continues in § 82.21(4)(b), which indicates that two towns "meeting together" make "an order" regarding apportionment of authority for a shared highway.

¶ 21. In summary, the plain language of the statutes directs that when an application regarding a shared town highway is submitted, the towns are required to act together in holding a public meeting, hearing comments, gathering information about the highway, making a determination on the application, and apportioning responsibility as required by any resulting highway order. Under Cedarburg's interpretation, each town would vote separately and if the application was not approved by a majority of the board members for each individual town, the application would fail. Thus, the act of voting on the application would be distinguished during the process as the only

member from a particular town will vote in lockstep. Because we do not accept the validity of the Wisconsin Towns Association's prediction, we do not address it further.

event on which the towns did not act in concert. We reject this interpretation as contrary to the legislative scheme of cooperation and joint action.

¶ 22. Second, the circuit court's interpretation is consistent with what earlier courts have held. We note that the Wisconsin case law on the subject of municipalities "acting together" is scant and what exists is dated. However, it is authoritative. In *State ex rel. Madison v. Walsh*, 247 Wis. 317, 19 N.W.2d 299 (1945), the court considered the statute relating to apportionment boards, which were comprised of members of boards or councils from multiple municipalities, and the transfer of territory from one to another. *Id.* at 320. The statute at issue in *Walsh* read in relevant part:

(5) APPORTIONMENT BOARD. The boards . . . of the municipalities . . . thereof selected for that purpose, acting together, shall constitute an apportionment board. When any municipality is dissolved by reason of all of its territory being so transferred the board . . . thereof existing at the time of such dissolution shall for the purpose of this section, continue to exist as the board . . . of such municipality

(6) MEETING. The board . . . of the municipality to which the territory is transferred shall fix a time and place for meeting . . . . The apportionment may be made only by a majority of the members from each municipality who attend . . . .

WIS. STAT. § 66.03 (1943). Because the statute provided for an apportionment "by a majority of the members . . . *who attend*," the supreme court concluded that a majority of those board members who attended the meeting would have the authority to make the apportionment. *Walsh*, 247 Wis. at 320. "It is true that the statute says the boards 'acting together' shall so act but this has

reference only to the method of proceeding if the municipalities choose to participate." *Id.*

¶ 23. Here, Jackson participated in the town highway determination by sending five board members to the joint hearing. Cedarburg participated by sending three of its five board members to the meeting. Under the *Walsh* approach, which rests on the vote of the majority who attend the meeting, the Dawsons' application was approved by a five-to-three majority in favor of discontinuing a portion of Wausaukee Road.

¶ 24. In addition, Jackson directs us to a Minnesota case that construed the term "acting together" in the context of a shared town road. In *Skrove v. Town Board of Towns of Belmont and Christiana*, 191 N.W. 584, 584 (Minn. 1922), a town line road was laid out along the border between Belmont and Christiana. "The proceedings therefor were conducted by the members of the town board of supervisors of the respective towns acting together." *Id.* The road deviated from the official boundary line in certain places to avoid "natural obstacles." *Id.* Proceedings were initiated to place the road "for its entire length directly on the town line." *Id.* A joint hearing on the petition was held and all board members of each town participated. *Id.* at 584–85. "It was then determined by a majority vote to grant the petition, and a formal order was prepared accordingly and signed by three members of the board of the town of Belmont and one member of the town of Christiana; the other two members declined to join therein." *Id.* at 585.

¶ 25. The statute under consideration by the Minnesota court stated that when a petition concerning a road between adjoining towns was filed, "the town board of each of such towns, or a majority of each,

*acting together as one board,* shall determine said petition." *Id.* (emphasis added). The court held:

> [T]here is created for the hearing and determination of proceedings to establish town line roads, an independent tribunal composed of a majority of the members of the affected towns, with authority, 'acting together as one board,' to determine the matters thereby presented. The statute does not require that a majority of the members of each town concur in an order laying out the roads, if that be the conclusion reached, but only that a majority of the members of each town shall compose the board or body authorized to act in the matter. In that situation, and in the absence of a statute to the contrary, a concurrence of a majority of the body thus constituted is as valid and legally effective as though all had joined therein.

*Id.*

¶ 26. Cedarburg argues that *Skrove* is of little help because the Minnesota statute expressly directed the two municipalities to act together *as one board.* It contends that the absence of the phrase "as one board" in the Wisconsin statute signals that the legislature did not intend the votes to be counted together. We disagree. If the legislature meant "acting together as separate boards" it would have provided that specific mandate. While reading "acting together" to mean "acting together as one board" adds words to the statute, it adds no unforeseeable or inconsistent meaning. Regardless, we do not read the Minnesota case as controlling; rather, it supports our adoption of the *Walsh* court's emphasis on the majority vote.

¶ 27. As a final observation, 4 EUGENE McQUILLIN, THE LAW OF MUNICIPAL CORPORATIONS, § 13.36 at 904–05 (3d rev. ed. 2002), provides the following guidance on joint assembly of municipal boards: "When the meet-

ing has once been duly organized, the identity of the component bodies forming it, in legal contemplation, disappears, and the vote of the majority of those constituting the joint body who are present controls . . . ." This general rule is consistent with the two cases discussed above. It aligns with the plain language of the statute and the legislatively crafted scheme of joint action. We conclude, based on all of the foregoing, that the votes of the Jackson board and the Cedarburg board were properly counted and that the majority of board members present voted in favor of the Dawsons' application.

## CONCLUSION

¶ 28. The Dawsons properly sought a declaratory judgment rather than certiorari review to clarify the meaning of the term "acting together" in Wis. Stat. § 82.21(2) and thereby determine the result of the vote on their application to discontinue a portion of Wausaukee Road. Cedarburg failed to pursue its claim of estoppel with any clarity or concreteness in the circuit court and has not demonstrated the required elements for a claim of estoppel on appeal. And, finally, the dispute over the meaning of the term "acting together" in § 82.21(2) must be resolved in favor of the Dawsons and the Town of Jackson. The two town boards may have voted separately, but the total votes cast must be counted together to determine the result. Any other interpretation of "acting together" would be unreasonable and contrary to the plain language of the statute. Accordingly, we affirm the judgment of the circuit court.

*By the Court.*—Judgment affirmed.